STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, v. CATHERINE KISZKAN *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—01—2075

Opinion filed February 17, 2004.—Rehearing denied March 15, 2004.

Joseph R. Curcio, of Joseph R. Curcio, Ltd., and David A. Novoselsky and Leslie J. Rosen, both of Novoselsky Law Offices, of Chicago, for appellants.

David E. Neumeister and Kelli A. Borden, both of Querrey & Harrow, Ltd., and Michael Resis and Glen E. Amundsen, both of O'Hagan, Smith & Amundsen, both of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

In May 2000, the plaintiff, State Farm Fire and Casualty Company (State Farm), filed a declaratory judgment action against the defendants, Catherine Kiszkan, and Tracy Gordon and Earline Taylor, as administrators for the estates of Mike Matricard and Readell Taylor, respectively (defendants). State Farm sought a declaration that its personal liability umbrella policy (PLUP), issued to its insured, Kiszkan, provided no coverage to the estate of Matricard for a personal injury and wrongful death action filed against him by the estate of Taylor. In May 2001, the circuit court granted State Farm's motion for summary judgment, finding Matricard was not an insured under Kiszkan's PLUP.

The defendants appeal, arguing (1) State Farm was not entitled to summary judgment as a material question of fact exists regarding the source of the misrepresentation in Matricard's insurance application that he and Kiszkan were related, (2) State Farm waived its right to deny coverage under Kiszkan's PLUP, and (3) the circuit court should have applied the doctrine of estoppel because State Farm represented that Matricard was an insured under Kiszkan's PLUP. We affirm.

## BACKGROUND

Since 1994, Kiszkan has been covered by a State Farm PLUP. Over the years, Kiszkan has obtained several State Farm policies through State Farm agent Andrew Oberc's office and visited Oberc's office on multiple occasions. In May 1998, Kiszkan and Matricard went to Oberc's office so that Matricard could apply for an automobile liability insurance policy (Automobile Policy) for his own vehicle. While the application for Matricard's Automobile Policy was being prepared, it was represented to Nancy Neberieza, Oberc's office manager, that Matricard was Kiszkan's grandson and lived with her. This familial relationship was noted on Matricard's Automobile Policy application that was sent to State Farm's underwriting department. In September 1998, Matricard and Taylor were involved in an automobile collision in which both men died. Matricard was driving his own vehicle and was covered by the Automobile Policy issued by State Farm.

In October 1998, the attorney for Taylor's estate wrote to Marcella Hatch, a State Farm claims specialist, requesting the dollar amount of liability coverage for Matricard under his Automobile Policy

and all umbrella policies. She did not reply. Hatch was initially assigned the responsibility of handling the claims brought by Taylor's estate against Matricard's estate. She also oversaw the death benefits available to Matricard's next-of-kin under his Automobile Policy. Acting on the information in Matricard's insurance application that Kiszkan was Matricard's next-of-kin, Hatch requested Kiszkan provide State Farm with a death certificate and the medical authorization needed to obtain Matricard's medical records. According to Hatch, she also received confirmation from Kiszkan herself that she was Matricard's grandmother. In January 1999, upon receipt of Matricard's death certificate from Kiszkan and Matricard's medical records, State Farm paid Kiszkan $20,000 for death benefits, and $2,000 for medical payment benefits under Matricard's Automobile Policy based on its belief that Kiszkan was Matricard's grandmother and next-of-kin.

In February 1999, the attorney for Taylor's estate again sent State Farm a letter requesting the amount of liability coverage that was available to Matricard's estate for the September 1998 collision. In March 1999, Sharon Smith, a claims team manager at State Farm, answered that Matricard's Automobile Policy had limits of $100,000 per person and $300,000 per accident and that "there is a Personal Umbrella policy with limits of $1,000,000 for personal liability."

In April 1999, the attorney for Taylor's estate sent State Farm notice of a petition to open Matricard's estate. Included with that notice was an "Affidavit of Heirship" completed by Kiszkan, referring to herself as a "friend" of Matricard and attesting that she did not know whether Matricard had ever been married or had any children. The service list, entitled "Exhibit A," attached to the petition, listed, *inter alia*, "Catherine Kiszkan, grandmother, closest known next-of-kin" (Exhibit A).

In May 1999, Taylor's estate filed a wrongful death and survival action against Matricard's estate. State Farm immediately assumed Matricard's defense, as required under his Automobile Policy, and the file was assigned to Mary Lou Kovac. From her review of the file, Kovac understood Kiszkan to be Matricard's grandmother and the PLUP coverage was available to Matricard as an insured. In December 1999, the attorney for Taylor's estate made a settlement demand on State Farm requesting the entire $1.1 million in coverage available under Matricard's Automobile Policy and Kiszkan's PLUP. State Farm did not settle.

In early March 2000, Kiszkan telephoned Kovac and told her that although Matricard had lived with her, he was not her grandson, nor was he a blood relative. Within days of the telephone call, State Farm reserved its right to deny coverage to Matricard's estate under Kisz-

kan's PLUP based on Matricard not being related to Kiszkan. In its reservation of rights letter, State Farm stated: "It is questionable whether Michael Matricard, deceased, was a relative of the first person named as an insured so as to be an insured as defined in the policy."

In May 2000, State Farm filed a declaratory judgment action seeking a determination of its rights and obligations to Matricard under the PLUP, but continued defending Matricard pursuant to his Automobile Policy. The defendants answered State Farm's complaint stating there was insufficient information to form a belief as to the truth of the allegation that Kiszkan and Matricard were not related. The defendants also raised the affirmative defenses of equitable estoppel, judicial estoppel, and waiver. State Farm denied the applicability of each affirmative defense.

In June 2000, a jury awarded Taylor's estate a $6.3 million judgment against Matricard's estate arising from the automobile accident in which both died. State Farm indemnified Matricard for the $100,000 limit of his Automobile Policy.

In September 2000, State Farm moved for summary judgment in the declaratory judgment action pursuant to section 2—1005(c) of the Code of Civil Procedure (735 ILCS 5/2—1005(c) (West 2000)), based on Matricard not being a relative of Kiszkan and, therefore, not an insured under Kiszkan's PLUP. In support of its motion, State Farm attached Kiszkan's deposition transcript wherein she testified that she and Matricard were not related. State Farm also attached the affidavits of Neberieza (officer manager for State Farm agent Oberc), Smith (State Farm claims team manager), and Kovac (responsible for Matricard's file upon the filing of Taylor's lawsuit against Matricard's estate). The affidavits detailed (1) how State Farm originally came to believe Matricard was Kiszkan's grandson, (2) the disclosures State Farm made regarding insurance coverage potentially available to Matricard, and (3) how State Farm learned Kiszkan and Matricard were not actually related.

The defendants filed a response and a cross-motion for summary judgment. The defendants did not dispute that Kiszkan and Matricard were not related; instead, the affirmative defenses of waiver, equitable estoppel, and judicial estoppel were raised. Neberieza was deposed and testified Kiszkan accompanied Matricard to Oberc's office, represented she was his grandmother, and asserted Matricard was there to apply for an automobile policy. Oberc and Neberieza were personally familiar with Kiszkan and, based on the information in the insurance application, knew Matricard and Kiszkan were living in the same household. However, Neberieza did not ask whether Kiszkan was Matricard's paternal or maternal grandmother; nor did she tell Matricard he had

to be related to Kiszkan in order to qualify for the multicar discount; instead, Neberieza on her own initiative qualified Matricard for the multicar discount.

In contrast, Kiszkan testified she did not speak with Neberieza when she accompanied Matricard to Oberc's office; in fact, Kiszkan denied knowing Neberieza. Kiszkan specifically denied telling Neberieza, or anyone else from State Farm, that Matricard was her grandson.

In May 2001, the circuit court granted summary judgment to State Farm. In June 2001, the circuit court entered an order finding State Farm was not liable to Matricard's estate under Kiszkan's PLUP because he did not qualify as an insured under her PLUP policy. Further, the circuit court declined to apply the doctrine of estoppel or waiver. This appeal followed.

## ANALYSIS

### I. Standard of Review

■ Initially we note this case comes to us on the circuit court's grant of State Farm's summary judgment motion. Both parties agree our review of the summary judgment ruling is *de novo. Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 459, 791 N.E.2d 522 (2003). " 'Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt.' " *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481 (2001), quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Therefore, "[s]ummary judgment is proper where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Illinois Education Ass'n*, 204 Ill. 2d at 459, quoting 735 ILCS 5/2—1005(c) (West 2000), and citing *Traveler's*, 197 Ill. 2d at 292.

### II. Question of Material Fact

The defendants argue State Farm was not entitled to summary judgment because the defendants' claim is based on the misrepresentation that Matricard and Kiszkan were related. According to the defendants, there is a material question of fact regarding the party responsible for that misrepresentation that can only be resolved by a trier of fact. If State Farm is found to be responsible for this misrepresentaion, as the defendants' argument goes, then the policy exclusion that would otherwise apply to Matricard has either been waived by

State Farm or State Farm should be estopped from asserting its denial of coverage.

State Farm argues the circuit court's grant of summary judgment was proper because under the PLUP policy issued to Kiszkan, Matricard was required to be related to Kiszkan in order to qualify for coverage under that policy. As it is not disputed that Matricard and Kiszkan are not related, Matricard did not qualify as an insured under Kiszkan's PLUP. Therefore, State Farm cannot be liable to Matricard's estate under the terms of the PLUP. In other words, State Farm was entitled to summary judgment because the declaratory action turned on the definition of "insured" under the PLUP, and the question of the source of the misrepresentation of the relation between Kiszkan and Matricard is immaterial to the coverage provided by the PLUP.

■ Although the responsibility for the misrepresentation is clearly disputed, the real question is whether the dispute is material to the issue of coverage under the PLUP. See *Protective Insurance Co. v. Coleman*, 144 Ill. App. 3d 682, 687, 494 N.E.2d 1241 (1986) ("The existence of factual questions will not deter summary judgment unless these facts are material to the litigation"). Although the defendants contend that Kiszkan's denial that she is the source of the misrepresentation that she and Matricard were blood relatives raises a material question of fact regarding coverage for Matricard under the PLUP, we do not agree. The question of coverage turns not on which side has the more credible explanation for the misrepresentation regarding Matricard being related to Kiszkan, but on the terms of the PLUP itself.

### III. Applicability of Waiver and Estoppel

The defendants further assert that under the facts presented here, State Farm has either waived its defense under the policy or should be estopped from asserting its policy defense. The defendants claim that State Farm was on notice of the lack of blood relationship between Kiszkan and Matricard as early as April 1999 and unreasonably failed to reserve its rights under the PLUP upon receipt of such notice. Further, the defendants contend that State Farm should be bound by the representation it made to the defendants that the $1 million coverage under the PLUP was available to the estate of Matricard. Finally, the defendants point out that Matricard was defended by State Farm, without a reservation of rights, in the underlying suit brought by the Taylor estate.

Although unnecessary to our resolution of this case, we point out that the defendants are not blameless in the confusion regarding the existence of a blood relation between Kiszkan and Matricard. Kiszkan,

acting as the purported "next-of-kin," provided State Farm with Matricard's death certificate and an authorization to obtain Matricard's medical records and accepted $22,000 in death benefits from State Farm under Matricard's Automobile Policy. Additionally, counsel for the defendants mailed State Farm Kiszkan's affidavit in the form of an "Affidavit of Heirship." The caption of the affidavit was misleading as Kiszkan, Matricard's "friend," had no basis to assert any "heirship." State Farm also received from counsel Exhibit A, which compounded the misleading nature of the "Affidavit of Heirship" by listing Kiszkan as "grandmother, closest known next-of-kin" of Matricard. Although the defendants claim the source of the initial misrepresentation of the relationship between Matricard and Kiszkan is disputed, it cannot be disputed that the defendants perpetuated the initial misrepresentation as late as April 1999. Although unnecessary to our holding, we find State Farm acted reasonably in not asserting its reservation of rights until March 2000 because prior to that point State Farm was proceeding under the mistaken, but justifiable, impression Matricard and Kiszkan were related; that is, Kiszkan was Matricard's grandmother.

■ As to the liability of State Farm to indemnify Matricard beyond the coverage of his Automobile Policy, this question turns on the coverage provided under the PLUP.[1] It is well settled that "whether [a claimant] is entitled to recover a judgment from the proceeds of [an] insurer is determined by the language of the policy." *Giardino v. Fierke*, 160 Ill. App. 3d 648, 653, 513 N.E.2d 1168 (1987). Clear and unambiguous language of an insurance policy determines the intent of the parties contracting for insurance. See *State Farm Mutual Automobile Insurance Co. v. George*, 326 Ill. App. 3d 1065, 1068, 762 N.E.2d 1163 (2002) (requiring coverage for derivative claim of bodily injury would impermissibly extend coverage beyond the parties' intended scope of the insurance policy). Here, the defendants do not claim the language regarding an "insured" in the PLUP can be read to extend coverage to Matricard. They concede that it cannot.

■ As the defendants concede that Matricard is not a relative of Kiszkan, and hence not an insured under the PLUP, it would seem beyond dispute that State Farm would have no liability to pay under the PLUP. See *Transcontinental Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh*, 278 Ill. App. 3d 357, 368, 662 N.E.2d 500

---

[1]Based on our holding in this case, we issued a stay in the trial of Earline Taylor v. State Farm (No. 1—03—2119) founded on a claim of "bad faith" by State Farm in not settling, in substantial part, under Kiszkan's PLUP.

(1996) (there can be no potential coverage if the plaintiff is not an insured); *Shapiro v. DiGuilio*, 95 Ill. App. 2d 184, 237 N.E.2d 771 (1968) (negative answer to question whether insurance policy covered liability of defendant to plaintiff determinative of all issues). Yet, the defendants do not agree. The defendants, however, cite no direct authority for their claim under the PLUP. Instead, the defendants seek to establish coverage by virtue of State Farm's handling of the Taylor estate's claim against Matricard for coverage under the PLUP by going outside the written terms of that policy and citing a single case involving waiver between an insured and the insurer as their support—*American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 631 N.E.2d 1292 (1994). No lengthy discussion is required to distinguish that case, involving parties to a contract for insurance, from this case, where no such contractual relationship exists between Matricard and State Farm under the PLUP. Here, there is no evidence to support " 'the intentional relinquishment of a known right,' " either expressly or impliedly, by State Farm of its ultimate policy defense as required to establish waiver. *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 305-06, 631 N.E.2d 1292 (1994), quoting *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 499, 475 N.E.2d 872, 878 (1985).

The defendants' estoppel claim also fails. Although estoppel may involve an "involuntary relinquishment," it also requires a showing by " 'clear, concise, and unequivocal evidence' " of prejudicial reliance. *National Cycle*, 260 Ill. App. 3d at 308, quoting *Old Mutual Casualty Co. v. Clark*, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977). The defendants have failed to demonstrate how Matricard's estate was prejudiced by State Farm's reservation of rights a month before the jury verdict against the estate of Matricard for $6.3 million. State Farm represented Matricard's estate under the Automobile Policy it issued Matricard for his own vehicle. There is nothing in the record other than the defendants' assertion that Matricard's estate was prejudiced by surrendering its defense to State Farm. "This is merely a legal conclusion and not a statement of fact." *National Cycle*, 260 Ill. App. 3d at 310; see also *Mid-State Savings & Loan Ass'n v. Illinois Insurance Exchange, Inc.*, 175 Ill. App. 3d 265, 272, 529 N.E.2d 696, 700 (1988). Further, there is no complaint that State Farm's representation under Matricard's Automobile Policy was defective in any way. See *National Cycle*, 260 Ill. App. 3d at 310. In fact, State Farm's reservation of rights only involved the issue of whether Matricard was covered under Kiszkan's PLUP; State Farm never contested its duty to defend Matricard's estate based on his Automobile Policy. When State Farm learned Matricard and Kiszkan were not related, it

300

promptly filed its action for declaratory judgment, but its representation of Matricard's estate in the action filed by Taylor's estate never faltered.

Although we empathize with the argument by Taylor's estate that it is unable to collect the vast majority of the damages awarded to it by a jury in June 2000, the fact remains that Matricard was not covered by Kiszkan's PLUP. State Farm had no duty to indemnify Matricard under the terms of her PLUP. We note that State Farm did have a duty to defend and indemnify Matricard up to $100,000 under Matricard's Automobile Policy and that State Farm successfully discharged its duty.

## CONCLUSION

Given the undisputed fact that Matricard and Kiszkan are not related, and hence, Matricard is not an insured under the PLUP, there exists no basis to extend coverage under the PLUP to include Matricard. Therefore, summary judgment was proper against the defendants.

Affirmed.

WOLFSON, P.J., and CAHILL, J., concur.