TERRELL ERVIN, Plaintiff-Appellee, v. NOKIA, INC., Defendant-Appellant (AT and T Corporation *et al.*, Defendants).

Fifth District    No. 5—04—0057

Opinion filed June 22, 2004.

John L. McMullin, of Brown & James, P.C., of St. Louis, Missouri, for appellant.

Bradley J. Sylwester and David W. Bauman, both of David Danis Law Firm, P.C., of St. Louis, Missouri, and Dave Nester, of Nester & Constance, of Belleville, for appellee.

JUSTICE DONOVAN delivered the opinion of the court:

Plaintiff, Terrell Ervin, commenced this putative class action against defendant, Nokia, Inc. (Nokia), in order to recover damages

for Nokia's alleged manufacture and sale of a defective product, the Nokia Model 8860 cellular telephone (Model 8860). Ervin's original complaint included a claim against AT&T Corp., AT&T Cellular Services, Inc., and American Telephone & Telegraph Company (collectively AT&T). AT&T's motion to stay proceedings and compel arbitration was granted. As a result, it is no longer a party to this action or appeal. Nokia also moved to stay the proceedings and compel arbitration. Ervin opposed Nokia's motion, arguing that Nokia was not covered by the arbitration provision and, therefore, lacked standing to attempt to enforce it. The circuit court of St. Clair County found that Nokia was not a party to the arbitration provision between Ervin and AT&T and could not enforce the arbitration clause. This interlocutory appeal followed; we have jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). See *Caudle v. Sears, Roebuck & Co.*, 245 Ill. App. 3d 959, 962, 614 N.E.2d 1312, 1315 (1993). We affirm.

## BACKGROUND

On or about July 5, 2000, Ervin purchased a cellular telephone from an AT&T Wireless Services, Inc., store. The telephone Ervin purchased was the Model 8860, manufactured by Nokia. At that time, AT&T also provided Ervin with a document entitled "Wireless Service Guide" (WSG). The WSG contained directions for the operation of the phone on the wireless network of AT&T, as well as other terms and conditions for the use of the service. On page 24 of the 25-page WSG, there was an arbitration clause providing, "Any dispute or claim arising out of or relating to this Agreement or to any product or service provided in connection with this Agreement (whether based in contract, tort, statute, fraud, misrepresentation[,] or any other legal theory) will be resolved by binding arbitration ***."

Ervin filed his putative class action in the circuit court of St. Clair County, Illinois, against Nokia and AT&T, alleging that the Model 8860 was defective and that Nokia and AT&T unlawfully misrepresented the phone or otherwise withheld information from the public regarding the phone's defects. Ervin's amended complaint alleged fraud, breach of an express warranty, breach of an implied warranty, breach of the covenant of good faith and fair dealing, unjust enrichment, and unfair trade practices.

On December 18, 2003, the trial judge issued an order in which he found that Nokia was not protected by any arbitration provision and could not enforce the WSG arbitration clause for the following reasons: (1) the WSG excludes the phone manufacturer, (2) the WSG is enforceable only by AT&T and its customers purchasing wireless services, (3)

Nokia's owner's manual (also provided with the Model 8860) did not provide for arbitration, (4) Nokia and AT&T are not inextricably intertwined, and (5) equitable estoppel does not apply to bind Ervin to something that does not exist (an arbitration agreement with Nokia). On January 20, 2004, Nokia filed its notice of interlocutory appeal pursuant to Rule 307(a)(1).

## ANALYSIS

■ Congress enacted the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (1994)) in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts[ ] and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991). The FAA reflects a "liberal federal policy favoring arbitration agreements" (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983); *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 384, 808 N.E.2d 957, 962 (2004)) and provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement (9 U.S.C. § 4 (1994)). The FAA also provides that, absent some ambiguity in the agreement, it is the language of the contract that defines the scope of disputes subject to arbitration. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 131 L. Ed. 2d 76, 84, 115 S. Ct. 1212, 1216 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties"). "[N]othing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289, 151 L. Ed. 2d 755, 766, 122 S. Ct. 754, 762 (2002). As stated by the United States Supreme Court in *Waffle House, Inc.*:

> "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.' *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478[, 103 L. Ed. 2d 488, 499, 109 S. Ct. 1248, 1255] (1989). See also *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404[ n. 12, 18 L. Ed. 2d 1270, 1277 n.12, 87 S. Ct. 1801, 1806 n.12] (1967) ('[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so'). Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625[,

87 L. Ed. 2d 444, 454, 105 S. Ct. 3346, 3353] (1985), we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. *Id.*, at 626[, 87 L. Ed. 2d at 454, 105 S. Ct. at 3353]. While ambiguities in the language of the agreement should be resolved in favor of arbitration, *Volt*, 489 U.S. at 476[, 103 L. Ed. 2d at 498, 109 S. Ct. at 1254], we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. 'Arbitration under the [FAA] is a matter of consent, not coercion.' *Id.*, at 479[, 103 L. Ed. 2d at 500, 109 S. Ct. at 1256]. Here there is no ambiguity." *Waffle House, Inc.*, 534 U.S. at 293-94, 151 L. Ed. 2d at 768-69, 122 S. Ct. at 764.

■ Nokia asserts that, pursuant to AT&T's WSG, it should be permitted to compel arbitration. We disagree. Nokia's argument is rebutted by the explicit language of the WSG itself. Throughout the WSG, AT&T made it clear that the agreement was to apply only to the relationship between AT&T and its customers. The terms and conditions portion of the WSG specifically states, "[These terms and conditions] govern *the relationship between you* [(*the consumer of AT&T Wireless Services*)] *and AT&T Wireless Services* and explain our respective legal rights concerning all aspects of our relationship." (Emphasis added.) The WSG further states, "This is an agreement *** *between you and the affiliate of AT&T Corp.* licensed to provide Service in the area associated with your assigned telephone ***." (Emphasis added.) Under the heading "Limitation of Liability," AT&T's WSG also states, "We are not liable for acts or omissions of another service provider, for information provided through your phone, equipment failure or modification, or causes beyond our reasonable control." And, finally, under the heading "No Warranties," the WSG states: "We do not authorize anyone to make any warranty on our behalf and you should not rely on any such statement. *We are not the manufacturer of the phone* and any statement regarding it should not be interpreted as a warranty." (Emphasis added.) There is no ambiguity in the WSG in this instance. By the clear terms of the agreement, Nokia is not a party to and cannot enforce the arbitration clause.

Nokia counters that even if it is a "nonsignatory" to the WSG, it should be allowed to enforce the arbitration agreement on the theories of agency, third-party beneficiary, and/or equitable estoppel.

Initially, we note that in deciding whether parties agreed to arbitrate a certain matter, courts should apply ordinary state-law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 131 L. Ed. 2d 985, 993, 115

S. Ct. 1920, 1924 (1995); *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004); *Amgen, Inc. v. Ortho Pharmaceutical Corp.*, 303 Ill. App. 3d 370, 376, 708 N.E.2d 385, 389 (1999).

In *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 738 N.E.2d 610 (2000), the court found that only signatories to an arbitration agreement can file a motion to compel arbitration. *Bishop*, 316 Ill. App. 3d at 1194, 738 N.E.2d at 619; see also *Vukusich v. Comprehensive Accounting Corp.*, 150 Ill. App. 3d 634, 642, 501 N.E.2d 1332, 1337 (1986). And in *Caligiuri v. First Colony Life Insurance Co.*, 318 Ill. App. 3d 793, 742 N.E.2d 750 (2000), the court held, "Under either federal or Illinois law, the right to compel arbitration stems from an underlying contract and generally may not be invoked by a nonsignatory to the contract." *Caligiuri*, 318 Ill. App. 3d at 800, 742 N.E.2d at 755; see also *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Board of Education of Meridian Community Unit School District 101 v. Meridian Education Ass'n*, 112 Ill. App. 3d 558, 562, 445 N.E.2d 864, 867 (1983). The court in *Caligiuri* also acknowledged that federal courts have recognized contract-based theories under which a nonsignatory may be bound to the arbitration agreements of others, such as (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter ego, and (5) estoppel. See, e.g., *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). The court stated:

> "It would seem to follow as a corollary that the same types of theories could afford a basis for a nonsignatory to invoke an arbitration agreement signed by others. Indeed, this court has suggested that this is the rule. See *Howells v. Hoffman*, 209 Ill. App. 3d 1004, 1007-09, 568 N.E.2d 934, 936-37 (1991) (addressing claim that broker could compel arbitration as third-party beneficiary, but also citing federal cases referring to agency and contract principles generally)." *Caligiuri*, 318 Ill. App. 3d at 800, 742 N.E.2d at 756.

We, therefore, address Nokia's agency theory first.

Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent and the agent has the power to conduct legal transactions in the name of the principal. *Caligiuri*, 318 Ill. App. 3d at 801, 742 N.E.2d at 756; *Illinois State Toll Highway Authority v. DiBenedetto*, 275 Ill. App. 3d 400, 410, 655 N.E.2d 1085, 1091 (1995). Under both federal law and Illinois law, the existence and scope of an agency relationship are questions of fact. *Caligiuri*, 318 Ill. App. 3d at 800, 742 N.E.2d at 756; see also *National Labor Relations Board v. Donkin's Inn, Inc.*, 532 F.2d 138, 141 (9th Cir. 1976). Under either

federal law or Illinois law, the trial court's ruling on agency is "subject to the more deferential standard traditionally applied to findings by a trier of fact." *Caligiuri*, 318 Ill. App. 3d at 801, 742 N.E.2d at 756; see also *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

In *Caligiuri*, the court found that the nonsignatory could not invoke the arbitration clause because it had failed to show it was the agent of the signatory to the arbitration agreement. Specifically, the court stated:

> "In sum, MLLA presented some evidence that it was controlled by MLPF&S, but that such control was limited by state insurance laws and stock exchange requirements. MLLA did not point to evidence in the record showing that it had the ability to conduct legal transactions in the name of MLPF&S. The trial court, as the trier of fact, found that MLLA failed to show it was an agent of MLPF&S in this context. Given the record on appeal, the trial court's ruling was not arbitrary or clearly erroneous." *Caligiuri*, 318 Ill. App. 3d at 803, 742 N.E.2d at 758.

Here, Nokia not only does not allege that it is the agent or principal of AT&T, but it steadfastly denies any suggestion that Nokia is in any way related to AT&T. Nokia's argument is that it should be allowed to enforce the arbitration clause contained in the WSG because Ervin's amended complaint implies an agency theory of liability. Nokia did not ask the court to make a finding that it was the agent or principal of AT&T, although it could have requested that finding based on Ervin's original pleading in which he alleged an agency between Nokia and AT&T. See *Pettigrew v. Putterman*, 331 Ill. App. 3d 633, 641, 771 N.E.2d 1008, 1014 (2002) ("The admissions of a party contained in an unverified original pleading that has been superseded by an amended pleading are not binding judicial admissions; however, such admissions may be used at trial as evidence of the matter admitted"). If the court had made a factual determination that Nokia was the agent or principal of AT&T, then Nokia would have been judicially estopped from taking a different position in the subsequent resolution of this matter (see *Johnson v. Du Page Airport Authority*, 268 Ill. App. 3d 409, 416, 644 N.E.2d 802, 807 (1994) ("The doctrine of judicial estoppel prohibits parties from adopting inconsistent legal positions in separate legal proceedings")), and this would have been inconsistent with Nokia's evident desire to distance itself from AT&T in the resolution of this dispute, whether it takes place in the courts or through arbitration. Considering the fact that Nokia contends it is not the agent of AT&T, we find that it is not appropriate to deviate from the general policy in Illinois that a nonsignatory should not be forced to

arbitrate a dispute pursuant to an arbitration clause it had not agreed to or be forced to invoke an arbitration clause to resolve a dispute pursuant to an arbitration agreement to which it is not a party.

Nokia's next argument is that it should be allowed to invoke the arbitration clause because it is a third-party beneficiary of the WSG. "The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Olson v. Etheridge*, 177 Ill. 2d 396, 404, 686 N.E.2d 563, 566 (1997). Illinois courts have found that a nonsignatory can enforce an arbitration clause if it is determined that the nonsignatory qualifies as a third-party beneficiary of the agreement. See *Dannewitz v. Equicredit Corp. of America*, 333 Ill. App. 3d 370, 373, 775 N.E.2d 189, 192 (2002); *Johnson v. Noble*, 240 Ill. App. 3d 731, 735-36, 608 N.E.2d 537, 540-41 (1992). The WSG in this case, drafted by AT&T, specifically excludes the manufacture of the phone (Nokia is the manufacturer). In Nokia's own owner's manual, it states that its agreement "supersedes all prior and contemporaneous agreements or understandings, oral or written, and all communications relating to the product." Nokia discounts each of these points and argues that the WSG requires Ervin to arbitrate "[a]ny dispute or claim arising out of or relating to this Agreement or to any product or service provided in connection with this Agreement." We disagree with Nokia. If AT&T intended that Nokia be a third-party beneficiary of the WSG, it could have included Nokia in the WSG, not specifically excluded it, and Nokia, in its documentation, could have adopted or at least been consistent with AT&T's WSG. Based on the record in this case, Nokia was not a third-party beneficiary of the WSG.

Finally, Nokia argues that it is entitled to compel the arbitration of Ervin's claims pursuant to the doctrine of equitable estoppel. Illinois law is as follows: "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399, 806 N.E.2d 727, 730-31 (2004); see also *Blisset v. Blisset*, 123 Ill. 2d 161, 169, 526 N.E.2d 125, 128 (1988). Although estoppel may involve an "involuntary relinquishment," it also requires a showing " 'by clear, concise, and unequivocal evidence' " of prejudicial reliance. *American States Insurance Co. v. National Cycle,*

*Inc.*, 260 Ill. App. 3d 299, 308, 631 N.E.2d 1292, 1299 (1994), quoting *Old Mutual Casualty Co. v. Clark*, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977); see also *State Farm Fire & Casualty Co. v. Kiszkan*, 346 Ill. App. 3d 292, 299, 805 N.E.2d 292, 298 (2004).

Nokia does not contend that the facts of this case satisfy the requirements for equitable estoppel as defined by Illinois courts. When Ervin entered into the WSG with AT&T for cell phone service in July of 2000, he took no action from which Nokia could have reasonably relied on to its detriment that Ervin had agreed to arbitrate any claim he had against Nokia. Nokia does argue, however, that we should adopt a definition of equitable estoppel that has been accepted in several federal courts to allow a nonsignatory to compel the arbitration of claims brought by a signatory to an arbitration agreement. This doctrine is best described in *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999):

> "Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory.* [Citation.] When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[ ] out of and relate[ ] directly to the [written] agreement,' and arbitration is appropriate. [Citation.] *Second, 'application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'* [Citation.] *Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'* [Citation.]" (Emphasis added.) *MS Dealer Service Corp.*, 177 F.3d at 947.

See also *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (applying the doctrine of equitable estoppel, the court held that "a signatory to [an] agreement *cannot* *** 'have it both ways': it cannot, on the one hand, seek to hold the non[ ]signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non[ ]signatory" (emphasis in original)); *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000); *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836, 839 (7th Cir. 1981).

Although instructive, decisions of United States district and circuit courts are not binding upon Illinois courts. *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118, 368 N.E.2d 891, 894 (1977); *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1003, 796 N.E.2d 633, 638 (2003). We decline to follow federal decisions that adopt this expanded interpretation of equitable estoppel, because they are inconsistent with the basic principle of arbitration that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353 (1960). The United States Supreme Court has not directly addressed the issue of using equitable estoppel to force a non-signatory to arbitrate or, vice versa, to allow a nonsignatory to force a signatory to arbitrate, but we find that its opinions in *First Options of Chicago, Inc.* and *Waffle House, Inc.* are consistent with our holding. See J. Byrnes & E. Pollman, *Arbitration, Consent and Contractual Theory: The Implications of EEOC v. Waffle House*, 8 Harv. Negot. L. Rev. 289, 310-12 (Spring 2003).

In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995), the Supreme Court reaffirmed three important contractual arbitration principles. First: *The contract governs whether a dispute is arbitrable or litigable.* "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc.*, 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924. "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." *First Options of Chicago, Inc.*, 514 U.S. at 942, 131 L. Ed. 2d at 992, 115 S. Ct. at 1923. Second: *State-law contract principles govern standing and the obligation to arbitrate.* "When deciding whether the parties agreed to arbitrate a certain matter ***, courts generally *** should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc.*, 514 U.S. at 944, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924. And third: *There must be parity of contractual enforcement.* "After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes [citation], but to ensure that commercial arbitration agreements, like other contracts, ' "are enforced according to their terms" ' [citation], and according to the intentions of the parties [citation]." *First Options of Chicago, Inc.*, 514 U.S. at 947, 131 L. Ed. 2d at 995, 115 S. Ct. at 1925; see *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 531 (5th Cir. 2000) (Dennis, J., dissenting).

Previously, we quoted extensively from *Waffle House, Inc.* and *First Options of Chicago, Inc.*, and we see no reason to repeat that material in this portion of the opinion. Suffice it to say that we understand that the direction of the Supreme Court is that arbitration is first a matter of consent (*Waffle House, Inc.*, 534 U.S. at 294, 151 L. Ed. 2d at 769, 122 S. Ct. at 764), and consent is to be determined by applying state law (*First Options of Chicago, Inc.*, 514 U.S. at 944, 131 L. Ed. 2d at 993, 115 S. Ct. at 1924). We find that the Illinois law of equitable estoppel is adequate to protect both Nokia and AT&T. To expand the doctrine of equitable estoppel, as indicated in the previously cited federal cases, would unfairly deny Ervin access to the courts and force him to arbitrate his claim against Nokia, in spite of the fact that Nokia was not a party to the WSG that Ervin entered into with AT&T.

Affirmed.

HOPKINS and WELCH, JJ., concur.