Rule 23 order filed
 NO. 5-03-0684

August 27, 2004;

Motion to publish granted
 IN THE

September 24, 2004.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

ARMETTIA PEACH, on Behalf of Herself )  Appeal from the

and All Others Similarly Situated, )  Circuit Court of

)  Madison County.

     Plaintiff-Appellee, )

)

v. )  No. 02-L-1253

)

CIM INSURANCE CORPORATION, )  Honorable

)  Nicholas G. Byron,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________

JUSTICE DONOVAN delivered the opinion of the court:

This is an appeal from the Madison County circuit court's refusal to compel plaintiff Armettia Peach to arbitrate her claims against defendant CIM Insurance Corp. (CIM).  On appeal, CIM seeks the reversal of the circuit court's arbitration ruling.  This interlocutory appeal followed; we have jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).  We affirm.

BACKGROUND

Armettia Peach filed a class action complaint against CIM for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2000)), common law fraud by misrepresentation, conspiracy to commit consumer fraud, and breach of contract.

CIM sells "Extended Protection Plans" (EPPs) to consumers who purchase automobiles.  Peach's complaint alleged that CIM, through Enterprise Car Sales (Enterprise), a car dealership located in Glen Carbon, Illinois, misrepresented to consumers that the full amount paid by the consumers for the EPPs would be passed through to CIM when, in fact, and unknown to the consumers, the dealerships retained a portion of the proceeds.  This alleged fraud was accomplished through the "Vehicle Buyer's Order" (VBO), which listed the EPP under the heading "Other Charges," grouped together with other pass-through charges, such as "License Fee" and "Documentary Fee."  The accompanying CIM EPP form contract likewise represented that the amount paid for the EPP was passed through to CIM.  However, only a portion of the amount listed on these form contracts was "passed through" to CIM for the extended warranties, and the remainder was retained by the dealer.

After the suit was filed, CIM filed a motion to compel arbitration and to stay the litigation of Peach's first amended complaint.  CIM premised its entitlement to compel arbitration on the presence of an arbitration provision in the contract between Peach and Enterprise.  Pointing to Peach's allegation in her complaint that Enterprise acted as CIM's agent in accomplishing the claimed fraud, CIM argued that, as the alleged principal behind the alleged fraud, CIM should be entitled to enforce the arbitration provision even though CIM was not a signatory to the contract.  Peach opposed CIM's motion.

The trial court entered an order denying CIM's motion.  According to the order: (i) CIM cannot enforce the arbitration provision in the contract between Peach and Enterprise, (ii) the arbitration provision is unconscionable because it precludes class action relief, (iii) the arbitration provision lacks mutuality of obligations, (iv) the costs of arbitration are prohibitively high, and (v) the arbitration provision is a part of a fraudulent scheme.  CIM then filed a notice of interlocutory appeal.  We will limit our analysis to whether CIM, as a nonsignatory to the contract between Peach and Enterprise, can enforce the arbitration provision in that contract, because it is dispositive of this case.

ANALYSIS

An order to compel arbitration is injunctive in nature and is appealable under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).  
Salsitz v. Kreiss
, 198 Ill. 2d 1, 11, 761 N.E.2d 724, 730 (2001).  Generally, the standard employed in reviewing an interlocutory order granting or denying a motion to compel arbitration is whether the circuit court abused its discretion. 
 Bishop v. We Care Hair Development Corp.
, 316 Ill. App. 3d 1182, 1189, 738 N.E.2d 610, 616 (2000).  However, a review of a trial court's construction of the arbitration agreement states a question of law that is subject to a 
de novo
 standard.  
Caligiuri v. First Colony Life Insurance Co.
, 318 Ill. App. 3d 793, 800, 742 N.E.2d 750, 756 (2000).  In reviewing whether CIM must either stipulate to a principal-agency relationship with Enterprise or demonstrate facts proving such a relationship to invoke the arbitration provision in the contract between Peach and Enterprise, we apply a 
de novo
 standard of review.  In deciding whether there was a sufficient showing in the record to infer a finding of agency, we apply an abuse-of-discretion standard.  We will also apply a 
de novo
 standard of review in deciding whether CIM should be allowed to compel arbitration based on equitable estoppel.

Initially, we acknowledge that Congress enacted the Federal Arbitration Act (FAA) (9 U.S.C. §1 
et seq.
 (1994)) in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts[] and to place arbitration agreements upon the same footing as other contracts."  
Gilmer v. Interstate/Johnson Lane Corp.
, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991).  The FAA reflects a "liberal federal policy favoring arbitration agreements" (
Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983); 
Borowiec v. Gateway 2000, Inc.
, 209 Ill. 2d 376, 384, 808 N.E.2d 957, 962 (2004)) and provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement (9 U.S.C. §4 (1994)).  
Ervin v. Nokia, Inc.
, 349 Ill. App. 3d 508, 510, 812 N.E.2d 534, 537 (2004).

CIM argues that pursuant to 
Caligiuri v. First Colony Life Insurance Co.
, 318 Ill. App. 3d 793, 800, 742 N.E.2d 750, 756 (2000), a nonsignatory to an arbitration clause can invoke an arbitration agreement under an agency theory.  We agree.  But we also note that 
Caligiuri
 held, "Under either federal or Illinois law, the right to compel arbitration stems from an underlying contract and generally may not be invoked by a nonsignatory to the contract."  
Caligiuri
, 318 Ill. App. 3d at 800, 742 N.E.2d at 755.  In addition, the court in 
Caligiuri
 found that the nonsignatory in its case could not invoke the arbitration clause because it had failed to show it was the agent of the signatory to the arbitration agreement. Specifically, the court stated: 

"In sum, MLLA presented some evidence that it was controlled by MLPF&S[] but that such control was limited by state insurance laws and stock exchange requirements.  MLLA did not point to evidence in the record showing that it had the ability to conduct legal transactions in the name of MLPF&S.  The trial court, as the trier of fact, found that MLLA failed to show it was an agent of MLPF&S in this context.  Given the record on appeal, the trial court's ruling was not arbitrary or clearly erroneous."  
Caligiuri
, 318 Ill. App. 3d at 803, 742 N.E.2d at 758.

In addition to 
Caligiuri
, we find that our opinion in 
Ervin v. Nokia, Inc.
, 349 Ill. App. 3d 508, 812 N.E.2d 534 (2004), is determinative of the issue in this case.  In 
Ervin
, Ervin, a phone user, brought a putative class action against phone manufacturer Nokia, Inc. (Nokia), and phone service providers AT&T Corp., AT&T Cellular Services, Inc., and American Telephone & Telegraph Company (AT&T) to recover damages for the alleged manufacture and sale of a defective product.  AT&T's motion to stay proceedings and compel arbitration was granted.  Nokia also moved to stay proceedings and compel arbitration based on the arbitration provision in AT&T's contract with Ervin.  The trial court denied the motion.  Nokia filed an interlocutory appeal.  We found that Nokia was not a party to the service contract, that Nokia was not a principal or agent of the service provider, that Nokia was not a third-party beneficiary of the contract, and finally, that Nokia could not compel arbitration pursuant to principles of equitable estoppel.  Specifically, in 
Ervin
 we stated:

"Here, Nokia not only does not allege that it is the agent or principal of AT&T, but it steadfastly denies any suggestion that Nokia is in any way related to AT&T.  Nokia's argument is that it should be allowed to enforce the arbitration clause contained in the WSG because Ervin's amended complaint implies an agency theory of liability.  Nokia did not ask the court to make a finding that it was the agent or principal of AT&T, although it could have requested that finding based on Ervin's original pleading in which he alleged an agency between Nokia and AT&T.  See 
Pettigrew v. Putterman
, 331 Ill. App. 3d 633, 641, 771 N.E.2d 1008, 1014 (2002) ('The admissions of a party contained in an unverified original pleading that has been superseded by an amended pleading are not binding judicial admissions; however, such admissions may be used at trial as evidence of the matter admitted').  If the court had made a factual determination that Nokia was the agent or principal of AT&T, then Nokia would have been judicially estopped from taking a different position in the subsequent resolution of this matter (see 
Johnson v. Du Page Airport Authority
, 268 Ill. App. 3d 409, 416, 644 N.E.2d 802, 807 (1994) ('The doctrine of judicial estoppel prohibits parties from adopting inconsistent legal positions in separate legal proceedings')), and this would have been inconsistent with Nokia's evident desire to distance itself from AT&T in the resolution of this dispute, whether it takes place in the courts or through arbitration.  Considering the fact that Nokia contends it is not the agent of AT&T, we find that it is not appropriate to deviate from the general policy in Illinois that a nonsignatory should not be forced to arbitrate a dispute pursuant to an arbitration clause it had not agreed to or be forced to invoke an arbitration clause to resolve a dispute pursuant to an arbitration agreement to which it is not a party."  
Ervin
, 349 Ill. App. 3d at 513-14, 812 N.E.2d at 540.

In this case, CIM did not request the trial court to find that Enterprise was its agent.  CIM has actually refused to take any position in the trial court or in this court regarding its relationship to Enterprise.  We can only assume that this is a tactical decision that will allow CIM, once it reaches arbitration, to deny that Enterprise was its agent, thereby refuting the exact allegation that allowed it to go to arbitration in the first place.  Considering that an arbitration clause cannot generally be invoked by a nonsignatory to the contract (
Caligiuri
, 318 Ill. App. 3d at 800, 742 N.E.2d at 755), we see no reason to extend this option to CIM when it refuses to take a position on whether it has any legal relationship with Enterprise.

CIM next argues that Peach is equitably estopped from claiming that CIM cannot enforce the arbitration clause.  This doctrine is best described in 
MS Dealer Service Corp. v. Franklin
, 177 F.3d 942 (11th Cir. 1999):

"Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.  First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory.  [Citation.]  When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate.  [Citation.]  Second, 'application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'  [Citation.]  Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'  [Citation.]"  
MS Dealer Service Corp.
, 177 F.3d at 947.

See also 
Washington Mutual Finance Group, LLC v. Bailey
, 364 F.3d 260, 267-68 (5th Cir. 2004); 
Grigson v. Creative Artists Agency, L.L.C.
, 210 F.3d 524, 528 (5th Cir. 2000) (applying the doctrine of equitable estoppel, the court held that "a signatory to [an] agreement cannot *** 'have it both ways': it cannot, on the one hand, seek to hold the non[]signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non[]signatory" (emphasis omitted)).  In contrast to these decisions, the court in 
DSMC Inc. v. Convera Corp.
, 349 F.3d 679 (D.C. Cir. 2003), held that the FAA does not govern the rights of a party who is not a signatory to an arbitration agreement but seeks to benefit from it anyway.  Specifically, the court in 
DSMC Inc.
 held as follows:

"Instead, Convera's motion to compel was expressly based on principles of equitable estoppel.  Convera contended that the relation between DSMC's claims against it and DSMC's claims against NGTL was such that DSMC should be compelled to arbitrate the former along with the latter.

Section 4, however, applies only to an 'alleged failure ... to arbitrate under a written agreement for arbitration'–not an alleged failure to arbitrate when principles of equitable estoppel indicate that you should.  Convera argued that the DSMC/NGTL contract 'satisfies the written arbitration agreement requirement,' Convera's Mem. Supp. Mot. to Compel, at 6, but Section 4 does not merely require that there be a written agreement somewhere in the picture.  It requires that the motion to compel be based on an alleged failure to arbitrate under that written agreement.  Convera's motion to compel is not based on any alleged failure by DSMC to arbitrate under the only written agreement at issue here–the one between DSMC and NGTL.  The motion is instead based on an effort to expand DSMC's obligation 
beyond
 the terms of that written agreement pursuant to principles of equitable estoppel.  As appellants acknowledge, '[t]he doctrine of equitable estoppel ... by definition applies where there is no written contract between the parties....'  Reply Br. at 6.

Convera recognizes that there is no precedent from this court compelling a party to an arbitration agreement to arbitrate with a non[]signatory on the basis of equitable estoppel, 
see
 Appellants' Br. at 22, but cites cases from other circuits that have done so.  Those cases typically did not address jurisdiction under Section 16 of the FAA[] but instead simply proceeded directly to consider the propriety of compelling signatories to arbitrate with non[]signatories.  We need not and do not decide whether such an effort can ever succeed.  What we do decide is that an effort to compel arbitration in such circumstances on the basis of equitable estoppel does not fall within Section 4 of the FAA.  Accordingly, we hold that this court has no jurisdiction under Section 16(a)(1)(B) to hear an appeal of an order denying a motion to compel arbitration between parties 
not
 under a written agreement to arbitrate."   (Emphasis in original.)  
DSMC Inc.
, 349 F.3d at 683.

We also recently addressed the issue of equitable estoppel in 
Ervin
.  We declined to extend the current definition of equitable estoppel as described in Illinois law and rejected the definition of equitable estoppel described in 
MS Dealer Service Corp.
  Pursuant to Illinois law: "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.  The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable."  
In re Marriage of Smith
, 347 Ill. App. 3d 395, 399, 806 N.E.2d 727, 730-31 (2004); see also 
Blisset v. Blisset
, 123 Ill. 2d 161, 169, 526 N.E.2d 125, 128 (1988).  Although estoppel may involve an "involuntary relinquishment," it also requires a showing " 'by clear, concise, and unequivocal evidence' " of prejudicial reliance.  
American States Insurance Co. v. National Cycle, Inc.
, 260 Ill. App. 3d 299, 308, 631 N.E.2d 1292, 1299 (1994) (quoting 
Old Mutual Casualty Co. v. Clark
, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977)); see also 
State Farm Fire & Casualty Co. v. Kiszkan
, 346 Ill. App. 3d 292, 299, 805 N.E.2d 292, 298 (2004).

The record in this case does not satisfy the requirements of equitable estoppel as defined by Illinois courts.  When Peach entered into the contract that had an arbitration clause with Enterprise, she took no action from which CIM could have reasonably relied on to its detriment that she would arbitrate any claim she had against CIM.  As we found in 
Ervin
, the Illinois law of equitable estoppel is adequate to protect CIM.  To expand the doctrine of equitable estoppel, as indicated in the previously cited federal cases, would unfairly deny Peach access to the courts and force her to arbitrate her claims against CIM, in spite of the fact that CIM was not a party to the VBO that Peach entered into with Enterprise.  
Ervin
, 349 Ill. App. 3d at 517, 812 N.E.2d at 543.

CONCLUSION

Because we find that CIM cannot enforce the arbitration clause contained in the agreement between Peach and Enterprise, we need not address the issues pertaining to the arbitration clause itself.

Affirmed.  

CHAPMAN, P.J., and KUEHN, J., concur.