No. 3--10--0194

Opinion filed May 9, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| LRN HOLDING, INC., and DAVID P. RANSBURG, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit Peoria County, Illinois |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 09--L--230 |
| WINDLAKE CAPITAL ADVISORS, LLC, | ) ) ) | |
| | ) | Honorable Joe Vespa, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Wright specially concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

Plaintiffs, LRN Holding, Inc. (LRN), and David Ransburg,

brought this declaratory judgment action against defendant,

Windlake Capital Advisors, LLC, seeking a declaration that a contract entered into by the parties is void. As such, plaintiffs claimed they were entitled to recover fees associated with the sale of LRN. Defendant, Windlake Capital Advisors, LLC., moved to dismiss the action or, in the alternative, to stay the action and compel arbitration. The trial court granted defendant's motion to stay the proceeding and ordered the matter to proceed to arbitration. Plaintiffs appeal from that order.

FACTS

Plaintiffs' complaint alleges that they entered into a contract with defendant which stated that defendant would act as the exclusive brokerage agent seeking to secure a purchaser of the assets or stock of LRN. The contract called for plaintiffs to pay defendant a $35,000 engagement fee upon the signing of the contract and a success fee of "$200,000 + 2% of all consideration" upon the closing of the transaction.

Plaintiffs' complaint acknowledges that defendant successfully brokered a transaction through which Robert Bosch Tool Corporation purchased LRN assets. Defendant received $1,226,340 in compensation for its services. The complaint contains no

2

allegations suggesting defendant's services were in any way inadequate or that the transaction somehow harmed plaintiffs.

Plaintiffs' complaint alleges, however, that their contract with defendant should be declared void as defendant failed to properly register its services with the State of Illinois. As such, plaintiffs claim they are entitled to collect defendant's $1,226,340 fee, as well as interest on those monies and attorney fees. Attached to the complaint is a photocopy of an "LLC File Detail Report" from the Illinois Secretary of State, the agreement between the parties, and photocopies of two pages associated with a "broker search" from the Illinois Secretary of State's Web site.

Defendant never answered plaintiffs' complaint but instead filed a "Motion to Dismiss or Stay Proceedings and to Compel Arbitration" pursuant to section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2008). In its memorandum in support of its motion, defendant noted the agreement between it and plaintiffs contained an arbitration provision mandating that any controversy between the parties relating to this agreement shall be resolved by binding

3

arbitration.

Defendant submitted that arbitration was mandated by both the Federal Arbitration Act (9 U.S.C. §1 et seq. (2006)) and the Illinois Uniform Arbitration Act (710 ILCS 5/1 et seq. (West 2008)). The trial court agreed and granted defendant's motion to stay the proceedings and compel arbitration. Plaintiffs appeal.

ANALYSIS

The sole issue raised on appeal is whether the trial court erred when granting defendant's motion. "[T]he decision whether to compel arbitration is not discretionary. Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it. [Citation.] *** On the other hand, where there is no valid arbitration agreement or where the parties' dispute does not fall within the scope of that agreement, the trial court may not compel it. [Citation.] *** Accordingly, we will employ a de novo standard of review ***." Travis v. American Manufacturers Mutual Insurance Co., 335 Ill. App. 3d 1171, 1175 (2002).

While our standard of review is de novo, our supreme court

4

has clearly indicated that when a trial court is "presented with a motion to stay litigation pending arbitration under section 3 of the FAA, the court's inquiry is limited to whether an agreement to arbitrate exists and whether it encompasses the issue in dispute." Jensen v. Quik International, 213 Ill. 2d 119, 123-24 (2004).

Plaintiffs make numerous arguments to support their claim that the trial court improperly compelled arbitration. The plaintiffs' first argument centers on their assertion that no contract existed between them and defendant. As such, plaintiffs suggest, "Illinois case law clearly mandates that the court, and not an arbitrator, make the determination regarding whether a contract with an unlicensed professional is void." Intertwined with this theory is plaintiffs' assertion that the "Illinois Arbitration Act applies to this case, and requires that the court determine that the purported agreement is void, notwithstanding federal cases interpreting the Federal Arbitration Act."

The gravamen of plaintiffs' initial argument is that an Illinois statute renders the agreement between plaintiffs and defendant void ab initio. As such, no enforceable arbitration

5

clause existed and, therefore, the trial court erred in compelling arbitration.  To support this proposition, plaintiffs direct our attention to the Illinois Business Brokers Act of 1995 (Brokers Act) (815 ILCS 307/10-5.10 et seq. (West 2008)), Aste v. Metropolitan Life Insurance Co., 312 Ill. App. 3d 972 (2000), and Kaplan v. Tabb Associates, Inc., 276 Ill. App. 3d 320 (1995).

Defendant disagrees with the plaintiffs, claiming even a broad challenge to the agreement as a whole must be decided in arbitration.  To support its position, defendant cites to the Federal Arbitration Act (FAA) (9 U.S.C. §1 et seq.) and numerous cases that interpret it.

A. The Agreement, Brokers Act and FAA

The arbitration provision in the agreement between the parties reads as follows:

> "Arbitration.  Any controversy, dispute, or
> claim between the parties relating to this
> Agreement shall be resolved by binding
> arbitration in accordance with the rules of
> the American Arbitration Association, as
> amended from time to time.  The parties

6

agree that the venue for any such

arbitration shall be Chicago, Illinois."

Section 10-10 of the Brokers Act mandates that every "person engaging in the business of business brokering" register with the Illinois Secretary of State. 815 ILCS 307/10-10 (West 2008). It further notes that if "a business broker commits a material violation of Section 10-10, 10-20, or 10-30 of this Act, in connection with a contract for business brokering services, the contract is void, and the prospective client is entitled to receive from the business broker all sums paid to the business broker, with interest and any attorney's fee required to enforce this Section." 815 ILCS 307/10-60 (West 2008). Plaintiffs' allegations that defendant is a business broker and never properly registered under the Brokers Act must be taken as true. See 735 ILCS 5/2-619 (West 2008); Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp., 304 Ill. App. 3d 734 (1999). Nevertheless, we hold the trial court did not err in compelling arbitration, as an agreement to arbitrate existed and it encompassed this dispute.

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440

7

(2006), the United States Supreme Court reviewed a matter in which the Florida Supreme Court held that the issue of whether an underlying contract between the parties was illegal and, therefore, void ab initio, must be decided by the trial court before arbitration of other disputes could be compelled. Cardegna v. Buckeye Check Cashing, Inc., 894 So. 2d 860 (Fla. 2005). The Florida Supreme Court reasoned that to enforce an agreement to arbitrate in a contract challenged as unlawful "could breathe life into a contract that not only violates state law, but also is criminal in nature." Cardegna, 894 So. 2d at 862. Reaffirming its holdings in Southland Corp. v. Keating, 465 U.S. 1 (1984), and Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), the Buckeye Check Cashing Court reversed, holding that the challenge to the validity of the contract should "be considered by an arbitrator, not a court." Buckeye, 546 U.S. at 446.

The Buckeye Court noted that section 2 of the FAA allows for challenges " 'upon such grounds as exist at law or in equity for the revocation of any contract' " which can take two forms. Buckeye, 546 U.S. at 444 (quoting 9 U.S.C. §2). "One type

8

challenges specifically the validity of the agreement to arbitrate."  Buckeye, 546 U.S. at 444 (citing Southland Corp., 465 U.S. at 4-5).  That type of challenge is not at issue in this matter as plaintiffs' complaint seeks a declaration that the contract as a whole is void ab initio.

"The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  Buckeye, 546 U.S. at 444.  The Court noted that in Southland Corp., it held that the FAA created a body of federal substantive law applicable to both state and federal courts alike.  Buckeye, 546 U.S. at 445 (quoting Southland, 465 U.S. at 12).  The Court specifically "rejected the view that state law could bar enforcement of §2, even in the context of state-law claims brought in state court."  Buckeye, 546 U.S. at 445.

With this as its backdrop, the Buckeye Court went on to note:

"First, as a matter of substantive federal

9

arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. *** [W]e conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." Buckeye, 546 U.S. at 445-46.

The Buckeye Court then noted that the Florida Supreme Court attempted to distinguish Prima Paint by relying "on the distinction between void and voidable contracts." Buckeye, 546 U.S. at 446. The Court noted the Florida Supreme Court's proclamation that Florida law permitted " 'no severable, or salvageable, parts of a contract found illegal and void' " was

10

"irrelevant." Buckeye, 546 U.S. at 446 (quoting Cardegna, 894 So. 2d at 864). The Court noted that Prima Paint "expressly disclaimed any need to decide what state-law remedy was available" and, as such, the Court specifically rejected "the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on 'Florida public policy and contract law.' " Buckeye, 546 U.S. at 446 (quoting Cardegna, 894 So. 2d at 864).

Justice Scalia acknowledged that the Prima Paint "rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But, it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. Prima Paint resolved this conundrum-and resolved it in favor of the separate enforceability of arbitration provisions. We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitra-tor." Buckeye, 546 U.S. at 448-49.

11

Two years after Buckeye, in Preston v. Ferrer, 552 U.S. 346 (2008), the Court revisited the question of what forum properly decides the validity of a contract that includes an arbitration provision. Preston involved a contract dispute between "Judge Alex" and his attorney/agent. Preston, 552 U.S. at 350. The attorney/agent invoked the arbitration agreement when seeking fees allegedly due under the contract. Preston, 552 U.S. at 350. Judge Alex countered his attorney/agent's demand for arbitration by filing a petition to the California labor commissioner charging that the contract was invalid and unenforceable under the California Talent Agencies Act (TAA) (Cal. Lab. Code §1700 et seq. (West 2003 & Supp. 2008)). Preston, 552 U.S. at 350. Judge Alex asserted that the attorney/agent acted as a talent agent without the license required by the TAA and, therefore his unlicensed status rendered the entire contract void. Preston, 552 U.S. at 355.

The trial court in California denied the attorney/agent's motion to compel arbitration and the California appellate court affirmed that ruling holding that relevant portions of the TAA vested "exclusive original jurisdiction" over the dispute in the

Labor Commissioner.  Ferrer v. Preston, 51 Cal. Rptr. 3d 628, 634 (Cal. Ct. App. 2006).  The California appellate court further ruled that Buckeye was "inapposite" because Buckeye "did not involve an administrative agency with exclusive jurisdiction over a disputed issue."  Ferrer v. Preston, 51 Cal. Rptr. 3d at 634. The California Supreme Court denied the attorney/agent's petition for review.  Ferrer v. Preston, No. S149190, 2007 Cal. LEXIS 1539 (Cal. Feb. 14, 2007).  The Preston Court noted that the "dispositive issue" was not whether the FAA preempts the TAA but instead "who decides whether Preston acted as a personal manager or as talent agent."  Preston, 552 U.S. at 352.

The Preston Court noted that a "recurring question under [section] 2 [of the FAA] is who should decide whether 'grounds ... exist at law or in equity' to invalidate an arbitration agreement."  Preston, 552 U.S. at 353 (quoting 9 U.S.C. §2).  The Court recounted its holdings from Prima Paint and Buckeye regarding the two types of challenges one may bring, either to the contract as a whole or the arbitration clause specifically, and the corresponding path of analysis taken.  Preston, 552 U.S. at 353-54.  The Court then reaffirmed its prior holdings and

13

found that since Judge Alex challenged the contract as a whole, the issue of the contract's validity must proceed to arbitration and not to the labor commissioner. Preston, 552 U.S. at 359 ("When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative."). The Preston Court acknowledged that the TAA specifically stated that " 'an unlicensed person's contract with an artist to provide services of a talent agency is illegal and void.' " Preston, 552 U.S. at 355 (quoting Styne v. Stevens, 26 P. 3d 343, 349 (Cal. 2001)). Nevertheless, the ultimate holding of the Court made clear that it was for an arbitrator to decide the "dispositive" issue of whether the attorney/agent acted as a talent agent. Preston, 552 U.S. at 359.

Similarly in the case at bar, LRN posits that the defendant's unregistered status renders the entire contract void ab initio pursuant to the Brokers Act. LRN claims that, as such, it is for the trial court to determine whether any contract existed before the case can be submitted to arbitration pursuant to the arbitration agreement. We disagree.

14

LRN does not attack the arbitration agreement specifically; it seeks to invalidate the entire contract. The arbitration clause, similar to the clauses in Preston and Buckeye, notes that "any controversy, dispute, or claim between the parties relating to this Agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association." Clearly, pursuant to Buckeye and Preston, the dispute between the parties must proceed to arbitration.

Our supreme court seemingly acknowledged the Prima Paint "severability" principle in Jensen v. Quik International, 213 Ill. 2d 119 (2004). The Jensen court noted that when presented with a motion to stay litigation pending arbitration pursuant to the FAA, "the court's inquiry is limited to whether an agreement to arbitrate exists and whether it encompasses the issue in dispute." Jensen, 213 Ill. 2d at 123. We note the Jensen court did not say the inquiry encompassed whether the contract between the parties is valid, but instead whether an "agreement to arbitrate" existed. The Jensen court continued that if "the court

15

finds that an agreement to arbitrate exists and the issue presented is within the scope of that agreement, a stay *** is mandatory."  Jensen, 213 Ill. 2d at 123-24.

The Jensen court cautioned that when "parties choose arbitration in their contract, the party later seeking to avoid arbitration should not be allowed to do so by merely alleging that no contract exists" and that "almost any plaintiff can find some theory or claim upon which to allege that no contact existed, thereby avoiding arbitration." Jensen, 213 Ill. 2d at 126, 129.  The Jensen court held that the issue of whether one party to the contract in dispute was entitled to rescission of the contract as a whole must be submitted to arbitration.  Jensen, 213 Ill. 2d at 128-29. We acknowledge that dicta in Jensen suggested that the holding may be different had the legislature specifically provided that specific contracts were void and unenforceable instead of merely providing the remedy of rescission. Jensen, 213 Ill. 2d at 127 ("Had the legislature intended

16

that a franchise agreement entered into in violation of sections 5 and 10 be unenforceable, it could have easily so provided.").  However, Jensen (2004) is a pre-Buckeye (2006) and pre-Preston (2008) case.

### B.  The Illinois Uniform Arbitration Act

Plaintiffs also argue that the Uniform Arbitration Act (Arbitration Act), and not the FAA, applies to this matter and the Arbitration Act mandates we allow the trial court to determine the validity of the contract.  Plaintiffs claim it is well settled that where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply even where interstate commerce is involved.

Plaintiffs note that section 2(a) of the Arbitration Act states that when an "opposing party denies the existence of the agreement to arbitrate," a "court shall proceed summarily to the determination of the issue."  710 ILCS 5/2(a)(West 2008).  Plaintiffs claim that section 10 of the contract mandates the Arbitration Act and not the FAA applies to this matter.  Section 10 states, "*Governing Law*.  This Agreement shall be interpreted under and governed in accordance with the laws of the State of Illinois."

Defendant claims plaintiffs have waived this matter by failing to raise it below.  However, a review of plaintiffs' "response in opposition to motion to dismiss or stay proceedings and to compel arbitration" indicates that plaintiffs, in fact, argued to the trial court that pursuant to "Section 2(a) of the Illinois Arbitration Act," they were denying the existence of an agreement.

17

We find that the plaintiffs have not waived this issue.

Plaintiffs are correct that courts have held where parties to a contract agree to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved. See *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214 (2008); see also *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC,* 376 Ill. App. 3d 411 (2007). However, defendant denies that it "agreed to arbitrate in accordance with state law" and notes that the arbitration provision clearly indicates that arbitration will proceed based upon the rules of the American Arbitration Association and not the Arbitration Act. Again, the United States Supreme Court has settled this issue.

Plaintiffs read *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1981), to support its position that the Arbitration Act should apply to this controversy. In *Volt*, the Court held that where "the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward." *Volt*, 489 U.S. at 479. We acknowledge that the *Volt* Court specifically found that "the application of the California statute is not pre-empted by the [FAA] *** in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." *Volt*, 489 U.S. at 470. Plaintiffs fail to address, however, subsequent United States Supreme Court case law that clarifies the holding of *Volt* and leads us to the conclusion that the FAA and rules of the American Arbitration Association apply to this

18

matter, not the Arbitration Act.

In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Court held that federal rules of arbitration applied to a dispute despite the fact that the contract at issue contained a clause providing that the contract " 'shall be governed by the laws of the State of New York.' " *Mastrobuono*, 514 U.S. at 53. *Mastrobuono* dictates that general choice-of-law clauses do not incorporate state rules which govern allocation of authority between arbitrators and courts. *Mastrobuono*, 514 U.S. at 60. Courts that have interpreted *Mastobuono* have noted that the "construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 729 n.9 (8th Cir. 2001) (citing *UHC Management Co. v. Computer Sciences Corp.*, 148 F.3d 992 (8th Cir. 1998)). See also *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287 (3d Cir. 2001); *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266 (9th Cir. 2002); *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926 (6th Cir. 1998).

The 2008 *Preston* case further clarified the Court's holding in *Volt*. As noted above, *Preston* involved an attempt by one party to a contract to have a dispute over the validity of the contract settled, pursuant to California statute, by an administrative agency instead of through arbitration. *Preston*, 552 U.S. at 349. The contract in *Preston* contained an arbitration clause mandating that " 'any dispute ... relating to ... the breach, validity, or legality' " of the contract should be arbitrated in accordance with the AAA rules as well as a choice-of-law clause stating that the " 'agreement shall be governed by the laws of the state of California.' " *Preston*, 552 U.S.

19

at 361.

When one of the *Preston* parties demanded arbitration to settle the dispute, the other petitioned the California labor commissioner asking that the contract be declared void pursuant to the California Talent Agencies Act. Cal. Lab. Code §1700 *et seq.* (West 2003 & Supp. 2008); *Preston*, 552 U.S. at 350. The California state courts concluded that the California Talent Agencies Act vested "exclusive original jurisdiction" over the dispute with the Labor Commissioner. *Preston*, 552 U.S. at 352. The party in *Preston* attempting to avoid arbitration argued that the holding in *Volt* mandated affirmation of the California state courts.

The Court disagreed, noting:

> "Ferrer's reliance on *Volt* is misplaced for two discrete reasons. First, arbitration was stayed in *Volt* to accommodate litigation involving third parties who were strangers to the arbitration agreement. Nothing in the arbitration agreement addressed the order of proceedings when pending litigation with third parties presented the prospect of inconsistent rulings. We thought it proper, in those circumstances, to recognize state law as the gap filler.

Here, in contrast, the arbitration clause speaks to the matter in controversy; it states that 'any dispute ... relating to ... the breach, validity, or legality' of the contract should be arbitrated in accordance with the American Arbitration Association (AAA) rules. [Citation.] Both parties are bound by the arbitration agreement; the question of Preston's status as a talent agent relates to the validity or legality of the contract; there is no risk that related litigation will yield conflicting rulings on common issues; and there is no other procedural void for the choice-of-law clause to fill.

Second, we are guided by our more recent decision in *Mastrobuono* [citation]. Although the contract in *Volt* provided for 'arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association,' [citation] (internal quotation marks omitted), Volt never argued that incorpor-

21

ation of those rules trumped the choice-of-law clause contained in the contract ***.

    ***

Preston and Ferrer's contract, as noted, provides for arbitration in accordance with the AAA rules. [Citation.] One of those rules states that '[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.' [Citation.] The incorporation of the AAA rules *** weighs against inferring from the choice-of-law clause an understanding shared by Ferrer and Preston that their disputes would be heard, in the first instance, by the Labor Commissioner. Following the guide *Mastrobuono* provides, the 'best way to harmonize' the parties' adoption of the AAA rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's

22

'special rules limiting the authority of arbi-

trators.' [Citation.]" *Preston*, 552 U.S. at 361-63.

Just as in *Preston*, the contract in this matter contained a generic state choice-of-law clause but also incorporated the AAA rules of arbitration. As such, we cannot find that the parties explicitly intended, by the mere inclusion of the generic choice-of-law clause, that disputes encompassed by the arbitration agreement be settled pursuant to the Arbitration Act. 710 ILCS 5/2(a) (West 2008).

CONCLUSION

In a nutshell, the plaintiffs agreed that "any controversy, dispute or claim between the parties relating to this agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association." Certainly, the issue of whether or not the agreement is void *ab initio* is a "controversy, dispute, or claim between the parties relating to [the] agreement." The law is clear; the issue must be arbitrated.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

JUSTICE WRIGHT, specially concurring:

Relying on *Aste v Metropolitan Life Insurance Co.*, 312 Ill App. 3d 972 (2000) and *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320 (1995), plaintiff contends that Illinois law requires the *court* to first determine whether the entire contract at issue is void and unenforceable before referring the matter to an arbitrator. Based only on the concessions of the plaintiff in this

23

case and the language of this specific agreement, now subject to our review, I specially concur. However, I recognize that the outcome of this decision may be inconsistent with the first district cases previously decided, but our decision is entirely consistent with the United States Supreme Court's holding in *Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978 (2008).

It is important to remember that plaintiff concedes that interstate commerce is involved in this case and agrees the parties contemplated their contractual disputes would be resolved by an arbitration process.[1]  In my view, these concessions are significant.

When the parties dispute whether an arbitration clause or separate arbitration agreement was contemplated by the parties to become part of their agreement, then under Illinois law, the court must first decide if the parties actually agreed to resolve disputes by means of arbitration. *Donaldson, Lufkin, & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443-45 (1988).  Such is not the case here.  In this case, plaintiff *concedes* the arbitration clause was the subject of a meeting

_____

[1] These circumstances are distinguishable from those considered by this court in *Peterson v. Residential Alternatives of Illinois, Inc.*, 402 Ill. App. 3d 240 (2010).  In *Peterson*, the primary issue was whether the parties agreed to arbitration at all.  The parties in that case signed two separate agreements, which included an inartful attempt to create a separate arbitration agreement.  This court found that neither contract signed by the parties referred to the other contract and therefore, after examining both agreements separately, we concluded an agreement to arbitrate the nursing home health care contract was neither contemplated by nor agreed upon by both parties.

24

of the minds. Instead, the issue before us is whether the arbitration clause and the contract, which the parties drafted, now requires the court or the arbitrator to decide whether plaintiff's contention that the contract was void, based on State law, has merit.

The contract at the heart of this appeal contains explicit language agreeing that the arbitration process would be controlled by the rules of the American Arbitration Association (AAA). Significantly, when the rules of the AAA are incorporated into a contract, as they were in this case, those same rules mandate that the parties to this contract "shall be deemed to have made these rules [of the AAA] a part of their arbitration agreement." *American Arbitration Association*, Commercial Arbitration Rules, R-1. Thus, I find it very difficult to accept plaintiff's claim that the parties to this appeal agreed to *arbitrate* in accordance with Illinois law.

Further, the AAA rules, agreed to by plaintiff, grant the *arbitrator* "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." *American Arbitration Association*, Commercial Arbitration Rules, R-7(b). These AAA rules, not State or Federal law, require the *arbitrator* to separately consider the arbitration clause from other provisions of this contract. Also according to these rules, the arbitrator is given the authority to determine whether the contract is void and if so, then determine the continued validity of the arbitration clause. *American Arbitration Association*, Commercial Arbitration Rules, R-7(b).

The contract in this case provides not only that the arbitration process would be controlled by the AAA rules, but also that the proceedings would take place in Chicago.

25

Obviously, based upon the contractual language at issue, we could not require the parties to travel to Peoria rather than Chicago for the arbitration hearing. Similarly, we cannot allow the *court* to first examine whether the contract in this case is void when the rules of the AAA, selected by the parties, require the arbitrator to first make this determination. In this appeal, we do not have a contract which is *silent* regarding whether the arbitration process will be governed by guidelines consistent with the Federal Arbitration Act (FAA) or will be governed by rules that may differ from the FAA.

Consequently, I respectfully suggest that we need not engage in a lengthy discussion explaining the relationship of the Illinois Arbitration Act to the FAA in order to resolve this appeal. Although, I agree with the majority's analysis of the case law as discussed, I write separately to emphasize that the trial court, and now this court, have simply upheld the explicit contractual choices incorporated by the parties to this contract which provide the blueprint for the course of their dispute resolution. Here, as part of their contract, the parties specifically agreed that all disputes would be resolved through arbitration and, in turn, also agreed their arbitration proceedings would be controlled by the rules of the AAA.

For these reasons, I specially concur.

JUSTICE HOLDRIDGE, dissenting:

I disagree with the majority's holding that *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006), and *Preston v. Ferrer,* 552 U.S. 346 (2008), prevent an Illinois court from enforcing section 10-10 of the Illinois Business Brokers Act of 1995 (Brokers Act) (815 ILCS

26

307/10-5.10 *et seq.* (West 2008)). I, therefore, respectfully dissent. I would reverse the trial court's order staying the plaintiffs' action for declaratory judgment and compelling arbitration. I would remand this matter to the circuit court with directions to adjudicate whether Windlake is in compliance with the Brokers Act and, if not, the court should order all relief mandated under that statute.

It is well settled that an arbitration clause in an agreement entered into in contravention of an Illinois statute requiring a party to register with the state prior to engaging in any licensed activity does not divest Illinois courts of jurisdiction to hear claims that a party has violated the licensing statute. *Aste v. Metropolitan Life Insurance Co.,* 312 Ill. App. 3d 972 (2000); *Kaplan v. Tabb Associates, Inc.,* 276 Ill. App. 3d 320 (1995). The court in *Aste,* quoting section 181 of the Restatement (Second) of Contracts, noted that " '[i]f a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or his promise to do it is unenforceable on grounds of public policy if (a) the requirement has a regulatory purpose, and (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.' " *Aste*, 312 Ill. App. 3d at 980 (quoting Restatement (Second) of Contracts §181 (1981). Here, there is no question that the Brokers Act has a regulatory purpose and a clear public policy purpose of protecting Illinois citizens from unlicensed business brokers.

Moreover, the *Kaplan* court noted that not only the contract as a whole, but each of the clauses, including the arbitration clause, is void as against public policy where a party has failed

27

to obtain a license required to protect the public from unlicensed practitioners. *Kaplan*, 276 Ill. App. 3d at 325 ("the Agreement between the plaintiffs and the defendant, including the arbitration clause, is void because the defendant filed to obtain a license to provide architectural services"). In other words, not only the putative agreement as a whole, but each and every provision of the agreement, including the arbitration clause, made in consideration of the promise by a nonlicensed party to provide business broker services is void. Clearly, if a party lacks the legal capacity to enter into a contract, it must also lack the legal capacity to enter into any of that contract's provisions. I would therefore find that the arbitration provision, upon which the majority relies to find that this dispute must be arbitrated, is void and cannot divest the circuit court of jurisdiction over suits brought under the Brokers Act.

Relying upon *Buckeye Check Cashing,* the majority finds that the arbitration clause contained in the parties' agreement mandates that the question of whether the defendant was in compliance with the Brokers Act at the time it entered into the contract must be decided by an arbitrator. I disagree with the majority and take issue with its application of the holding in *Buckeye Check Cashing* to the facts in the instant matter. As the majority points out, in *Buckeye Check Cashing,* the Court held that the validity of a contract as a whole should "be considered by an arbitrator, not a court." *Buckeye*, 546 U.S. at 446. However, where the challenge is to the validity of the arbitration clause, independent of a challenge to the validity of the contract as a whole, it is appropriate for the court to decide the matter. *Buckeye*, 546 U.S. at 445-46.

What *Buckeye Check Cashing* does not address is what happens if the challenge is to *both* the contract as a whole *and* the validity of the arbitration clause. Such is the matter herein. Although the majority characterizes the plaintiffs' complaint as seeking a declaration that the contract as a whole is void *ab initio*, the plaintiffs actually sought a declaration that the defendant had violated the Brokers Act and then sought all appropriate remedies under that statute. Under the Brokers Act, a contract for business brokerage services entered into by a nonlicensed broker is void, as is each provision of the agreement, including an agreement to arbitrate disputes under the putative agreement. *Kaplan*, 276 Ill. App. 3d at 325. The plaintiffs' challenge is not only to the legality of the contract as a whole, but also the legality of each and every provision of the agreement. In other words, what is at issue here is whether a party that cannot legally enter into a business brokerage contract can nonetheless legally enter into an agreement to arbitrate any disputes arising under that contract. I find nothing in law cited by the majority to support a conclusion that an agreement to arbitrate contained within an illegal contract is any more enforceable independently than the agreement itself. Both the entire agreement and each clause contained therein are equally susceptible to a challenge. The arbitration clause, as part of the agreement entered into in violation of the Brokers Act, is also independently in violation of the Brokers Act and is, therefore, subject to the same challenge as the agreement as a whole. Consistent with *Buckeye Check Cashing,* I would hold that the plaintiffs challenged the legality of the arbitration clause *as well as* the contract as a whole, and I would find that the court is the appropriate forum in which to bring a cause of action under the Brokers Act.

29

I would also find that *Preston v. Ferrer* is distinguishable from the instant matter in that *Preston* presented a specific factual question as to whether a California statute covering talent agents applied to the contract at issue. *Preston*, 552 U.S. at 352 ("The dispositive issue, then, contrary to Ferrer's suggestion, is not whether the FAA [Federal Arbitration Act] preempts the TAA [Talent Agent Act] wholesale. [Citation.] *** Instead, the question is simply who decides whether Preston acted as [a] personal manager or as [a] talent agent"). The Court held that such a factual question was within the arbitrator's ken. *Preston*, 552 U.S. at 353. Here, there is no question that the defendant was acting as a business broker and that the Brokers Act therefore applied.

In addition, there is nothing in the holdings of either *Buckeye Check Cashing* or *Preston* that overrules our supreme court's guidance in *Jensen v. Quik International*, 213 Ill. 2d 119, 127 (2004), wherein the court noted that where registration pursuant to statute is a statutory prerequisite to entering into a valid agreement, the entire agreement, including arbitration provision, is unenforceable. *Jensen,* 213 Ill. 2d at 127 ("Had the legislature intended that a franchise agreement entered into in violation of sections 5 and 10 be unenforceable, it could have easily so provided."). See *Galasso v. KNS Cos., Inc.*, 364 Ill. App. 3d 124, 128 (2006) (citing *Jensen* for the proposition that where a statute requires registration as a condition precedent to a valid agreement and not merely as a basis for rescission of the agreement, the arbitration provision contained in the agreement is likewise void). Here, unlike the Franchise Disclosure Act of 1987 (815 ILCS 705/5 (West 2008) at issue in *Jensen*, the Brokers Act contains an

30

express provision that proper registration as a business broker is a condition precedent to a valid business broker agreement (815 ILCS 307/10-60 (West 2008)). I would find that *Jensen* still dictates the result in this matter and should guide our resolution of this matter.

Moreover, the instant matter is distinguishable from all other cases relied upon by the majority in that, here, the contract at issue is fully executed. The defendant has been paid in full for its services, and the plaintiffs raised no controversy, dispute or claim relating to the agreement. The only issue raised in the instant litigation was whether the defendant was a properly registered and licensed business broker under the Brokers Act. Based upon the pleadings, there was no question of fact as to whether the defendant was acting as a business broker. The only question was whether the defendant was properly registered as a business broker. The answer to that question is either a simple "yes," in which case the litigation is at an end and the defendant is allowed to keep the fee it received under the contract, or a simple "no," in which case the defendant *must* return the fees charged in violation of the Brokers Act and pay the plaintiffs' attorney fees in bringing this action under the Brokers Act.[2]

---

[2] I am somewhat perplexed by the defendant's insistence in prolonging the litigation in this matter. The Brokers Act is very clear that strict compliance with the registration and licensing requirements of section 10-10 is required in order to engage in the practice of business brokering in this state. Either the defendant is in strict compliance with the Brokers Act or it is not, and it should answer the question forthwith so that this matter may be concluded in a judicious manner.

31

Because I would find that the matter of the defendant's ability to render business broker services in Illinois is not a matter within the ken of an arbitrator, I would reverse the judgment of the circuit court of Peoria County compelling arbitration and I would remand this matter to the circuit court with direction that the defendant be ordered to answer the complaint. Depending upon the answer, the court should then enter an appropriate judgment forthwith.