# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Brown v. Delfre*, 2012 IL App (2d) 111086**

---

| | |
|---|---|
| Appellate Court Caption | ALEX BROWN, Plaintiff-Appellee, v. ANTHONY D. DELFRE and WEALTH CAPITAL MANAGEMENT GROUP, LLC, Defendants-Appellants (The Players Group, LLC, Defendant). |
| District & No. | Second District<br>Docket No. 2-11-1086 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | January 26, 2012<br><br>March 29, 2012<br>March 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging malfeasance in connection with investments plaintiff made with defendants, the trial court's denial of defendants' motion to compel arbitration was reversed, notwithstanding plaintiff's contention that the arbitration provision of the parties' wealth management services agreement was not enforceable due to the fact that the agreement provided that arbitration would be conducted under the rules of the National Association of Securities Dealers, but NASD would not conduct the arbitration because neither party was a member of NASD, since the agreement required only that NASD rules be used and non-NASD arbitrators could be used; therefore, the cause was remanded with directions to allow arbitration, and if the parties are unable to agree on an arbitral entity, the trial court shall, upon application by any party, designate an arbitrator. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-L-829; the Hon. Margaret J. Mullen, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Edward M. Kay, Brian J. Riordan, Christopher M. Kahler, and Mark J. Sobczak, all of Clausen Miller P.C., of Chicago, for appellants. |
| | Laurence M. Landsman, of Block & Landsman, and Nicholas P. Iavarone, of Iavarone Law Firm, P.C., both of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Bowman and Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Alex Brown, filed a complaint against defendants, Anthony D. Delfre, Wealth Capital Management Group, LLC (WCMG), and The Players Group, alleging malfeasance relating to investments plaintiff made with defendants. Defendants moved the trial court to dismiss the complaint and compel arbitration or, alternatively, to stay the proceedings and compel arbitration. On October 20, 2011, the trial court denied defendants' motion. Defendants Delfre and WCMG appeal.[1] For the following reasons, we reverse and remand the cause.

¶ 2                    I. BACKGROUND

¶ 3    According to the complaint, plaintiff lived in Lake County and played professional football for the Chicago Bears. Delfre is a registered securities broker who owns WCMG, an Ohio company that provides investment advice. Delfre also owns Players Group, a Utah company with its principal office in Ohio. Plaintiff's trusted financial advisor, Jason Jernigan, had a professional relationship with Delfre and, via that relationship, Delfre acquired detailed information regarding plaintiff's investment and financial background.

---

[1]Defendant Players Group is not a party to this appeal.

Jernigan and Delfre worked closely together such that, on statements for some of plaintiff's accounts, WCMG was identified as plaintiff's advisor. Ultimately, in 2009, Delfre and plaintiff worked together directly regarding investment opportunities. Delfre met with plaintiff at plaintiff's home and, based upon Delfre's representations, plaintiff invested $750,000 with Players Group. The investment did not prove profitable and, in fact, plaintiff alleged that Delfre and Players Group dissipated and misused his investment. Plaintiff's complaint alleged breach of fiduciary duty and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2008)) and sought an accounting and constructive trust. Plaintiff also sought $750,000 in compensatory damages and $2.25 million in punitive damages, as well as costs and attorney fees.

¶ 4     On June 9, 2011, defendants moved pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) to dismiss the complaint and to compel arbitration or, alternatively, to stay proceedings pursuant to section 3 of the Federal Arbitration Act (Act) (9 U.S.C. § 3 (2010)) and section 2 of the Uniform Arbitration Act (710 ILCS 5/2 (West 2010)). Defendants argued that, on April 13, 2009, plaintiff and WCMG entered into a wealth management services agreement that states that WCMG would serve as plaintiff's investment advisor and provide investment and financial services. The agreement includes the following "governing law" provision:

    "This agreement will be governed by and construed in accordance with the laws of the State of Ohio without giving effect to any of its conflict or choice of law provisions ***. WCMG is not a broker/dealer or member of the National Association of Securities Dealers, Inc. (NASD) and is not subject to the jurisdiction of the NASD or other self-regulatory organization.

    Notwithstanding the forgoing, any dispute or controversy between Client and WCMG or any of WCMG's officers, directors, agents, or employees, arising out of or relating to this Agreement or the relationship created hereby, shall be submitted to binding arbitration *conducted by and according to the securities arbitration rules then in effect of the NASD* in arbitration proceedings to be conducted in Cleveland, Ohio. Client is aware of and by signing this Agreement acknowledges that: (1) arbitration is final and binding on the parties; (2) Client and WCMG are waiving their right to seek remedies in court, including the right to a jury trial, except to the extent such a waiver would violate applicable law; (3) pre-arbitration discovery is generally more limited than and different in form and scope from discovery typically available in court proceedings; (4) the arbitrators' award is not required to include factual findings or legal reasoning and a party's right to seek modification or appeal from arbitrators' rulings is strictly limited; and (5) the panel of arbitrators *may* include arbitrators who were or are affiliated with the securities industry. In any arbitrations conducted hereunder, the arbitrators shall award the prevailing party, in addition to any other relief that may be awarded, its or their reasonable attorneys' fees, costs, and expenses (including, but not limited to, fees charged by any expert witness)." (Emphases added.)

¶ 5     After defendants filed their motion, plaintiff wrote to the Financial Industry Regulatory

Authority (FINRA) (the successor to NASD),[2] inquiring whether it would administer an arbitration involving a nonmember entity, such as WCMG. FINRA responded that it would administer an arbitration only where at least one party was a FINRA member and that, otherwise, it lacked jurisdiction to act. Thus, plaintiff responded to defendants' motion to compel arbitration and argued that: (1) the arbitration provision was void and unenforceable because FINRA would not administer the arbitration; and (2) defendants had waived arbitration.

¶ 6    On October 20, 2011, the trial court entered its written order, determining that the arbitration provision required that any disputes between the parties to the agreement be "conducted by and according to" the rules of NASD/FINRA. Accordingly, the court determined, the agreement required the arbitration to be "conducted by" NASD/FINRA and, therefore, the designation of NASD/FINRA as arbitrator was an integral part of the provision. The court noted that FINRA has specialized knowledge regarding investments and securities and that it had refused to arbitrate the instant dispute. Therefore, the court found that the arbitration clause was unenforceable, and it denied defendants' motion to dismiss the complaint and to compel arbitration or, alternatively, to stay the proceedings and compel arbitration. The court further found that defendants did *not* waive their right to invoke the arbitration provision. Defendants Delfre and WCMG appeal.

¶ 7                                    II. ANALYSIS
¶ 8                               A. Standard of Review
¶ 9    We address first the proper standard of review. An order denying a motion to compel arbitration is injunctive and is appealable pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. July 6, 2000). See *Illinois Concrete-I.C.I., Inc. v. Storefitters, Inc.*, 397 Ill. App. 3d 798, 800 (2010). As plaintiff notes, it has been said that, on a Rule 307(a)(1) interlocutory appeal, the "sole issue" the appellate court considers is whether there was a "sufficient showing" to sustain the trial court's order denying the motion to compel. *Id.*

¶ 10   Nevertheless, the standard applied to an interlocutory appeal of a denial of a motion to compel arbitration is ultimately dictated by the nature of the issue decided. *Peach v. CIM Insurance Corp.*, 352 Ill. App. 3d 691, 694 (2004) (appellate court would consider for an abuse of discretion whether there was a sufficient showing in the record to support the trial court's finding that the parties, in fact, enjoyed the relationship required by the arbitration agreement, but would consider *de novo* whether the agreement required such a relationship); *Caligiuri v. First Colony Life Insurance Co.*, 318 Ill. App. 3d 793, 800 (2000) (where party argued waiver and that, as an agent of a signatory to the agreement, it could compel arbitration thereunder, appellate court noted that questions of waiver and agency were factual and subject to deference, whereas interpretation of the arbitration agreement itself was a legal question subject to *de novo* review).

---

[2]There is no dispute that FINRA succeeded NASD. Thus, we will in this opinion alternatively reference NASD/FINRA or FINRA as appropriate.

-4-

¶ 11    Thus, where the question on appeal concerns the trial court's construction of an arbitration agreement, the question is one of law that we review *de novo*. *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20 (2011) (arbitration agreement is a contract and interpretation thereof is question of law reviewed *de novo*); see also *LRN Holding, Inc. v. Windlake Capital Advisors, LLC*, 409 Ill. App. 3d 1025, 1027 (2011) (applying *de novo* review to court's decision to grant motion to compel arbitration); *Sabo v. Dennis*, 408 Ill. App. 3d 619, 626 (2011) (to the extent decision requires interpreting the arbitration agreement, question is one of law reviewed *de novo*); *Peach*, 352 Ill. App. 3d at 694 ("review of a trial court's construction of the arbitration agreement states a question of law that is subject to a *de novo* standard"); *Caligiuri*, 318 Ill. App. 3d at 800 (to the extent motion to compel arbitration is denied based on the interpretation of the underlying contract, review is *de novo*).

¶ 12    Here, we are asked to determine whether the trial court properly concluded that the arbitration provision is unenforceable because: (1) it named NASD/FINRA as arbitrator and (2) the designation was integral to the agreement. As these questions involve interpretation of the agreement, they are legal and will be reviewed *de novo*.

¶ 13                      B. Applicable Law Favors Arbitration

¶ 14    When considering the issues on appeal we remain mindful that "[i]t is well established that agreements to submit to arbitration, as an alternative method of dispute resolution, are favored at both the state and federal levels." *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011). "[T]he decision whether to compel arbitration is not discretionary. Where there is a valid arbitration agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court [unless the agreement is invalid] must compel it." (Internal quotation marks omitted.) *LRN Holding*, 409 Ill. App. 3d at 1027 (quoting *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1175 (2002)).

¶ 15    The Federal Arbitration Act applies to both state and federal courts (*QuickClick Loans*, 407 Ill. App. 3d at 52), and it was enacted "to reverse long-standing judicial hostility to arbitration agreements and to place arbitration agreements on the same footing as other contracts." *Carr*, 241 Ill. 2d at 21. The Act reflects a liberal policy in favor of arbitration agreements, providing, in section 2 (9 U.S.C. § 2 (2010)), that any written contract (involving commerce) evidencing an intent to resolve by arbitration any controversies arising thereunder "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See also 710 ILCS 5/1 (West 2010) (Uniform Arbitration Act provision containing almost identical language).

¶ 16    Moreover, section 5 of the Act (9 U.S.C. § 5 (2010)) provides as follows:

   "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, *or if for any reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy*, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or

arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein ***." (Emphasis added.)

Accordingly, if the parties have chosen an arbitrator or arbitral forum and that selection becomes unavailable, section 5 of the Act permits the trial court to name a substitute or replacement arbitral forum. *Carr*, 241 Ill. 2d at 26. An exception to application of section 5, however, exists where the parties' designated arbitral forum is "integral" to the parties' agreement to arbitrate. *Id.* To determine whether the chosen forum is integral, a court looks to the essence of the agreement to assess whether the agreement to arbitrate is the essential term or whether the failed term (*i.e.*, the chosen arbitral forum) was as important a consideration as the agreement to arbitrate itself. *Id.* at 22-23. In other words, if the agreement to arbitrate and the chosen forum are of equal importance, the chosen forum is integral and a new forum may not be substituted. In contrast, "[w]here the designation of an arbitral forum is only an ancillary, logistical concern and the primary consideration is the intent to arbitrate disputes, allowing a court to appoint a substitute arbitrator fulfills the parties' agreement to arbitrate." *Id.* at 26-27.[3]

¶ 17          C. Arbitration Provision Did Not Name NASD/FINRA as Arbitrator

¶ 18     Here, the questions on appeal are whether the arbitration provision designates NASD/FINRA as the arbitral forum and, if it does, whether that designation is so integral to the agreement that FINRA's refusal to conduct the arbitration renders the entire arbitration provision unenforceable. The trial court answered both questions in the affirmative. We disagree.

¶ 19     Unambiguous contract terms must be afforded their plain and ordinary meaning. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 174 (2008). Our *de novo* review of the parties' agreement leads us to conclude that the parties chose only the rules that would be applied to any arbitration between them, *not* the forum that would administer the arbitration. Again, the arbitration agreement here provides that any dispute between the parties "shall be submitted to binding arbitration *conducted by and according to the securities arbitration rules then in effect of the NASD*." (Emphasis added.) Plaintiff argued, and the trial court agreed, that the agreement specifies the arbitral forum because it provides that arbitration will be "conducted by *** NASD." As defendants point out, this construction ignores that the terms "conducted by and according to" relate to the immediately following object, *i.e.*, NASD's "rules." NASD is not specified in any manner except to specify which rules should be applied, *i.e.*, NASD's rules that are in effect at the time of the arbitration. Plaintiff argues that this interpretation renders meaningless the phrase "conducted by." We disagree. Broken

---

[3]On appeal, defendants cite federal and Ohio law. Plaintiff points out that, because defendants relied on Illinois law before the trial court, they have agreed that Illinois law applies. In the end, the choice of law does not matter here. The two main legal issues, contract interpretation and application of the Act, require the same result regardless of the law applied. We will, however, apply Illinois law, as plaintiff urges is appropriate.

down, the agreement's plain language states that the arbitration will be conducted "by and according to" the rules. Which rules? NASD's.

¶ 20    We further note that contract terms should not be read in isolation. Reading the arbitration provision as a whole supports our plain language interpretation. First, if the parties contemplated that NASD/FINRA would be the exclusive arbitral forum, there would be no need to specify that the arbitration must be conducted by NASD/FINRA's rules. See, *e.g.*, *Carr*, 241 Ill. 2d at 29 (discussing the rationale used by the court in *Adler v. Dell Inc.*, No. 08-cv-13170, 2009 U.S. Dist. LEXIS 112204 (E.D. Mich. Dec. 3, 2009), that requiring that a specific forum's rules be used would appear to be surplusage unless another arbitral forum could be used). Second, the agreement explicitly states that WCMG is not a member of NASD and is not subject to NASD's jurisdiction. As defendants note, it is absurd to interpret the contract as limiting arbitration to a forum unable to administer it. *Hot Light Brands, L.L.C. v. Harris Realty, Inc.*, 392 Ill. App. 3d 493, 499 (2009) (contract should not be interpreted in a manner so as to render one clause meaningless).

¶ 21    Plaintiff asserts that the chosen rules *require* application in a FINRA forum and that, therefore, the agreement, by selecting the rules, also selected the forum. We reject this argument. First, although plaintiff includes, in a separate appendix on appeal, copies of what appear to be FINRA rules, those rules were not included in the record before the trial court. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009) (party may not rely on matters outside of the record to support his or her position). Second, the agreement specifies that the rules to be applied are those that are in effect at the time of the arbitration, and, therefore, we do not know whether the version presented in plaintiff's appellate brief is, in fact, the version that will ultimately be applied to this dispute. Third, we read the rules in plaintiff's appendix (which permit arbitration under FINRA's code of rules for "any dispute between a customer and a member or associate person of a member that is submitted to arbitration under Rule 12200 or 12201") not as *prohibiting* use of the rules outside of a FINRA forum but as providing only that, where parties that are FINRA members agree to submit their dispute to arbitration under the FINRA code, FINRA's rules may be applied. *Cf. Carr*, 241 Ill. 2d at 31 (citing a National Arbitration Forum (NAF) provision that the NAF code "shall be administered *only* by the [NAF]" (emphasis added and internal quotation marks omitted)).

¶ 22    Accordingly, we conclude that the arbitration provision selected only the rules to be applied in the event of an arbitration, *not* the arbitral forum that would conduct the arbitration. Because we conclude that the arbitration provision did not select an arbitration forum, the trial court erred in finding that, because FINRA declined to arbitrate, the arbitration provision is unenforceable. While our inquiry could end there, we note that, even if the agreement *did* select NASD/FINRA as arbitrator, that designation was *not* integral to the agreement and, therefore, the overarching agreement to arbitrate remains enforceable.

¶ 23    Even where parties explicitly specify in their arbitration agreement both an arbitral service to handle arbitration *and* the rules to be applied, that fact does not, standing alone, make the forum designation integral to the agreement. *Id.* at 30. If that were the case, the *Carr* court noted, then section 5 of the Act (permitting appointment of a substitute arbitrator when the selected one becomes unavailable) would not apply in *any* case where the specified arbitrator becomes unwilling or unable to handle the arbitration. *Id.* Thus, "the mere

designation of particular rules to govern an arbitration will not prevent the naming of a substitute arbitrator under section 5." *Id.* at 31. Again, to determine whether the designation of the forum is integral or whether a substitute forum may be appointed via section 5 of the Act, a court must review the agreement to determine whether the overarching purpose was to submit to arbitration or whether the chosen arbitral forum was as important a consideration as the agreement to arbitrate itself. The following cases prove instructive.

¶ 24    In *Carr*, the provision at issue provided that any dispute "will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules." (Internal quotation marks omitted.) *Id.* at 20. Further, the agreement provided, "[s]hould either party bring a dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision." (Internal quotation marks omitted.) *Id.* The supreme court looked to the agreement as a whole and determined that, because it provided that NAF would be the "exclusive" administrator of the arbitration and included a penalty provision for bringing a dispute in a forum other than NAF, the chosen arbitral forum was integral to the agreement. *Id.* at 33. Accordingly, where NAF had declined to arbitrate and it was integral to the agreement, the trial court could not substitute an arbitrator under section 5 of the Act. *Id.* Thus, the arbitration provision was unenforceable.

¶ 25    Similarly, in *QuickClick Loans*, the arbitration agreement contained a specific provision entitled "Choosing the Administrator," which provided that "the party requiring arbitration must choose one of the following arbitration organizations as the Administrator: American Arbitration Association (AAA) *** or National Arbitration Forum (NAF) ***. *** If for any reason the chosen organization is unable or unwilling or ceases to serve as the Administrator, the party requiring arbitration will have 20 days to choose a different Administrator consistent with the requirements of this Arbitration Agreement." (Internal quotation marks omitted.) *QuickClick Loans*, 407 Ill. App. 3d at 48. Ultimately, both AAA and NAF became unavailable forums. The court determined that the plain language of the agreement provided that, if the chosen forum was unavailable, a new one could be selected only in a manner consistent with the agreement's requirements, and, because the agreement exclusively designated AAA and NAF as the only administrators that could be chosen, the selection of the arbitral forum was integral to the agreement. *Id.* at 53-54. Thus, section 5 could not be used to appoint an alternative forum, and the provision was rendered unenforceable. *Id.*

¶ 26    In contrast, in a case discussed by our supreme court in *Carr*, the Ninth Circuit Court of Appeals, in *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006), considered an arbitration agreement similar to that presented here. Specifically, the agreement at issue provided that all controversies between the parties would be determined by arbitration and that "[a]ny arbitration under this agreement shall be determined pursuant to the rules then in effect of the [NASD], as the undersigned you may elect. If the undersigned fails to make such election, then you may make such election." *Id.* at 1057. Ultimately, NASD refused jurisdiction over the arbitration because no party was an NASD member, and the district court refused to appoint a substitute arbitrator under section 5 of the Act. *Id.* The appellate court disagreed, concluding first that the agreement did not reflect a choice of

forum; rather, it reflected choice of NASD rules. It did "*not* state that the arbitration is to take place before the NASD itself. Had the latter been intended, the parties could easily have said so." (Emphasis in original.) *Id.* at 1059. The court noted that, by selecting NASD rules, the parties likely at least considered or implicitly expected that NASD would be a proper forum, but that, ultimately, it did not matter because, even if the clause constituted a choice-of-forum clause, it was not integral to the agreement. *Id.* at 1060. The court found no evidence that the choice was integral such that, upon NASD's unavailability, the entire agreement became unenforceable, particularly given that "there was not even an express statement that the NASD would be the arbitrator." *Id.* "Something more direct is required before we, in effect, annihilate an arbitration agreement." *Id.*

¶ 27    We find this case more like *Reddam* than *Carr* or *QuickClick Loans*. Nothing in this agreement evidences that the choice of NASD/FINRA was so integral to the agreement that the agreement to arbitrate would be void if FINRA declined jurisdiction. Again, the agreement here did not provide for both a choice of law *and* a choice of arbitrator, or that NASD/FINRA would be the "exclusive" arbitrator, or that there would be a penalty if a party sought arbitration before a non-FINRA entity. Like in *Reddam*, the agreement did not even expressly state that FINRA would be the arbitrator. The provision, read as a whole, evidences that the parties' primary intent was to arbitrate their disputes. Indeed, the provision lists with detail the differences between arbitration and court proceedings, the rights to recover costs and fees, and the location where the arbitration would take place. Therefore, because the agreement does not reflect that FINRA was named as arbitrator or, if it was, that the designation was integral to the agreement, we cannot conclude that FINRA's unavailability renders the agreement unenforceable.

¶ 28    We further note that we disagree with plaintiff's assertion that the designation of FINRA rules reflects that the parties contemplated that any arbitration would require specialized financial or investment expertise and that, therefore, designating FINRA as arbitrator was integral to the agreement. First, the agreement does not designate FINRA, only its rules. Second, plaintiff has not established on appeal that FINRA's rules cannot be followed by another neutral arbitrator.[4] Again, FINRA's rules are not in the record before us, but even if there are technicalities (such as, as plaintiff notes, various computer databases) that are available to FINRA but are not available to other arbitration administrators, we cannot say

---

[4]We note again that, in *Carr*, the NAF arbitration rules expressly provided that they could be administered *only* by NAF itself. The court noted that this explicit restriction further favored a finding that the designation of NAF and its rules was integral to the agreement. *Carr*, 241 Ill. 2d at 31-32. The court noted, however, that neither party indicated whether, once NAF became unavailable, an arbitrator could be appointed who would be allowed to conduct an arbitration under NAF's rules and that, therefore, it would be speculation for the court to make any finding concerning the ability of a substitute arbitrator to use NAF rules. *Id.* at 32. Here, the rules are not before us and they do not, as plaintiff represents them, appear to explicitly restrict their application to arbitrations conducted by FINRA. Thus, it would be speculative for us to assume, as plaintiff urges, that a substitute arbitrator could not apply FINRA rules.

that those technicalities trump the overall agreement to arbitrate.[5] Third, the agreement here acknowledges that "the panel of arbitrators *may* include arbitrators who were or are affiliated with the securities industry." (Emphasis in original.) In our view, this provision contemplates that arbitrators who are not affiliated with the securities industry, *i.e.*, non-FINRA arbitrators, may also be used.

¶ 29      In sum, the trial court erred in finding the arbitration agreement unenforceable and in denying defendants' motion to compel arbitration and to dismiss the complaint or, alternatively, stay the proceedings. We note that, when a motion to compel is granted, the case is not automatically transferred to an arbitrator; rather, the matter is simply stayed in the trial court, and if the party who lost on the motion to compel still wishes to pursue his or her claim, it is responsible to file for arbitration. See 710 ILCS 5/2(d) (West 2008) ("Any action or proceeding involving an issue subject to arbitration *shall* be stayed if an order for arbitration or an application therefor has been made under this section ***. *** [T]he order for arbitration shall include such stay." (Emphasis added.)); *Jensen v. Quik International*, 213 Ill. 2d 119, 123-24 (2004) (if arbitration appropriate, a stay under section 3 of the Act is mandatory); *Jackson v. Payday Loan Store of Illinois, Inc.*, No. 09 C 4189, 2010 U.S. Dist. LEXIS 25266, at *14 (N.D. Ill. Mar. 17, 2010) (granting motion to compel arbitration and staying proceedings pending the outcome of any action in arbitration brought by the plaintiffs). Thus, the trial court's judgment denying the motion to compel arbitration is reversed. The cause is remanded for the court to allow arbitration and to stay the proceedings pending the outcome of any arbitration brought by plaintiff. If plaintiff wishes to pursue arbitration and the parties cannot agree on an arbitral entity, the trial court shall, upon application by any party and pursuant to section 5 of the Act, designate or appoint one.

¶ 30                             III. CONCLUSION

¶ 31      For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded with directions.

¶ 32      Reversed and remanded with directions.

---

[5]In a similar vein, plaintiff suggests that FINRA rules require use of a *FINRA arbitrator* and that, because FINRA will not conduct the arbitration, the rule requiring a FINRA arbitrator cannot be complied with and, therefore, the agreement is unenforceable. Again, the rules are not properly before us; accordingly, there is no basis in the record for plaintiff's assertion. Further, plaintiff has not provided any evidence that FINRA arbitrators may not arbitrate outside the FINRA forum. For example, it is theoretically possible that, if FINRA arbitrators are independent contractors, one may be hired to conduct an arbitration hearing even where FINRA, as an entity, does not have jurisdiction over the dispute.